THOMSON ELECTRIC WELDING CO. *v.* PEERLESS WIRE FENCE CO.

1. Contracts—Patent Rights—Lease.

Where a lease of certain patent rights specified the inventions by number, and included 111 distinct patents, which were not all that defendant then owned, and the lease did not refer to such other rights of the same character as plaintiff had and controlled, the term of the lease was limited to the life of those rights which were specifically enumerated, and could not be extended by the proof of other patents that were owned or held by plaintiff at the time of making the lease, and expired at a later date than those referred to.

2. Same—Construction—Royalty Contract.

Express reference in a contract to one or more things in a given class, implies that others not so included are not within its provisions, especially in a contract drawn and prepared by one of the parties, who asks that it be interpreted in a light favorable to him, being subject to the rule of construction that a contract is to be construed most strongly against the party using the language.

3. Same—General Rule.

And it must be construed as an entirety, so far as possible, reconciling and giving meaning to every part and

clause; general and unlimited terms are restrained and
limited by particular recitals when used in connection
with them, and recitals, as well as operative clauses,
should be considered as a part of the whole.

Error to Lenawee; Chandler, J.   Submitted January
6, 1916.   (Docket No. 51.)   Decided March 30, 1916.

Assumpsit by the Thomson Electric Welding Company, a foreign corporation, against the Peerless Wire Fence Company, a corporation, for damages for breach of covenants in certain leases.   Judgment for defendant on a verdict directed by the court.   Plaintiff brings error.   Affirmed.

*Daniel J. Lyne* and *Edwin Merrick Dodd, Jr.,* for appellant.

*J. N. Sampson* and *Wilber Owen,* for appellee.

STEERE, J.   Plaintiff brought this action to recover from defendant damages for breach of the covenants contained in four leases it had given to defendant of certain electric welding machines.   The case was tried before a jury in the circuit court of Lenawee county, and a verdict directed for defendant.

Each of the four leases was for a single electrical welding machine, the same printed form being used for all, and the blank spaces pen-filled with the varying identifying numbers, dates, etc.   They were respectively dated June 1, 1905, November 15, 1905, August 31, 1907, and December 2, 1907.   These machines were received, accepted, used, and the stipulated rental or royalties paid for them by defendant until July 14, 1910, when it returned the four machines to plaintiff and refused to make further payments. As disclosed upon the record, the chief contention between the parties arises over the duration of the leases,

the material portions of which having a possible bearing upon this question may be stated as follows:

In each lease the subject-matter, in relation to which the parties contract, is introduced by the following recitals, which immediately precede and connect with the first contracting clause of the instrument as indicated:

"Whereas, the lessor is the owner of the following letters patent of the United States [designating by numbers a list of 111 patents], relating to the art of welding or otherwise treating metals by electricity, or to apparatus for use in connection therewith; and the lessor may apply for and secure letters patent of the United States on other similar inventions;

"And whereas, the lessor is engaged in the manufacture of apparatus operating according to or embodying the invention described in said letters patent or some of them;

"And whereas, the lessee desires to acquire the right to use the apparatus so manufactured which is specified in the schedule hereinafter contained, for the purpose hereinafter named in clause 3, within the places or territory specified in said clause:

"Now, then, it is hereby mutually covenanted and agreed between the parties hereto as follows:

"(1) The lessor, in consideration of an initial rental to it paid by the lessee on the execution hereof, to wit, the sum of four hundred dollars ($400), and of the covenants of the lessee hereinafter contained, * * * this lease to continue in force until the expiration of all the letters patent of the United States now or hereafter owned by the lessor, the inventions of which are or shall be embodied in said apparatus, or at any time involved in the use thereof."

Clause 3, mentioned in the second recital, restricts use of the apparatus leased to defendant's factory at Adrian, Mich., "for the sole purpose of welding iron and steel wire into lengths from coils or reels." Clause 6, which states, "Following is the schedule heretofore referred to," has different numbers inserted in each lease to designate the machine it applied to, and otherwise describes the property leased as:

"Marks 2A—2EE—Electric welder, 300 volts, 15 amperes, with spring pressure device, including automatic 'G' brake switch. Reactive coil."

By clause 7 the privilege is given defendant to purchase the leased machines for a nominal sum after fully complying with the terms and conditions imposed, "upon the expiration of all the letters patent of the lessor the inventions of which shall at any time be embodied in the leased apparatus or involved in the use thereof," and by clause 9 plaintiff reserves the right, in case of defendant's default, to terminate the leases upon 15 days' notice in writing, "but the lessee shall not by any such termination be released from liability to pay all sums then already accrued under the instrument." By clause 10, "upon any termination of this lease under the provisions of clause 9," plaintiff is authorized to repossess itself of the property, or pursue its appropriate remedies "against the lessee or the persons in whose possession said apparatus or any parts thereof may be found." Neither party, however, took any steps to avail itself of these clauses, as the machines were sent back upon the date stated, and plaintiff brought this action against defendant to recover rental or royalties for their longer use, on the ground the leases had not yet expired. Other provisions and covenants not material here are contained in the instruments.

Upon the trial plaintiff introduced the evidence of Mr. Hodges, its general manager, to the effect that its last expiring patents embodied in the respective machines leased to defendant were numbered 649,179 and 719,508—numbers which were not included in the list of patents enumerated in the leases nor elsewhere particularly pointed out as those owned by plaintiff at the time the leases were executed. Plaintiff then sought to introduce certified copies of the letters patent in relation to which Hodges testified, for the purpose of

showing that they were yet in force when defendant, on July 14, 1910, returned the machines and refused longer to pay royalties upon them. To these counsel for defendant objected on the ground that they were not mentioned in the leases and had no connection with them; that the contracts were complete in and of themselves to the exclusion of the patents sought to be proven, and nothing in the evidence so connected the contracts with those patents as to entitle them to be considered.

While other objections were made and other questions raised on rulings, the case finally turned on the admissibility of proof of these patents. The court ruled that they were not admissible, and directed a verdict for defendant, construing the leases as too indefinite in that particular to permit receiving in evidence any letters patent not enumerated in them for the purpose of fixing their duration, saying in part:

"In other words, the construction I put upon this contract, there is no proof could be offered as to the time it was to run, excepting as it would be mentioned in the letters patent which are enumerated in the contract; and, none such having been offered in evidence, there is nothing to go to the jury."

It is conceded in the briefs of counsel that the exclusion by the trial court of the patents offered in evidence and the rulings in that connection are the controlling matters for consideration here. This raises but the single question whether, on the issue made, duration of the leases is limited by their terms to the life of such patents or inventions as are by number stated in their recitals, or whether the wording of the leases, taken as a whole, authorized other patents not specifically mentioned, but relating to such inventions and embodied in the apparatus leased and then owned by plaintiff to be proved and taken into consideration. No question of later inventions or subsequently ac-

quired patents is involved. Plaintiff makes no contention here, and did not claim or offer to prove upon the trial, that any patents "hereafter owned" by it (speaking from the date of the leases) were ever embodied in the leased apparatus, or that any of its patents enumerated in the leases were unexpired when the machines were returned. The only direct provision as to duration of these leases is in the concluding portion of clause 1, above quoted. Plaintiff contends that the language there used is so plain and unequivocal that it can have but one meaning and permits no other by construction or interpretation; that the letters patent it sought to prove covered inventions embodied in the apparatus leased which had not expired and were owned by it when the leases were made, all of which it was able and ready to prove if permitted; that the contract was neither indefinite nor uncertain as to time of termination, for that is certain in law which can be made certain. While defendant contends that, construing the contract as a whole, the language relied upon by plaintiff is qualified by the context, and restricted in its application to patents which it was recited, understood, and agreed between the parties plaintiff owned at the time the contract was made or to those thereafter acquired, if subsequently embodied in the machines. In other words, as we understand defendant's claim, it invokes a doctrine of estoppel by recital.

The nature of the contracts makes apparent the reason for, and no misunderstanding could well arise over, the provision protecting defendant in the right to use any patented improvements subsequently acquired by plaintiff which might be added to or embodied in the machines, and which, if used by defendant, would prolong the time during which rental or royalties should be paid; otherwise the time of termination of the contracts could be definitely fixed when the agreement was entered into, either by general ref-

erence to all the patents plaintiff then owned or to par-
ticular ones definitely designated covering inventions
made use of in the machines. Plaintiff apparently at-
tempted to do both, which defendant contends resulted
in so clouding the agreement, considered in its en-
tirety, with misleading language and confusing pro-
visions as to render applicable the excluding rule of
construction that:

"The expression in a contract of one or more things
of a class implies the exclusion of all not expressed,
although all would have been implied had none been
expressed." 9 Cyc. p. 584.

These contracts, considered as a whole, are not har-
moniously worded with reference to the time of their
termination, and at least give opportunity for mis-
understanding. The question is whether by fair inter-
pretation it should be held as a matter of law that the
minds of the contracting parties met, or should have
met, upon the proposition contended for by plaintiff.
The form of contract was furnished by plaintiff, and
the language used is of its choosing. It related to
plaintiff's products of manufacture, inventions, and
patents in the peculiar knowledge of which the parties
were not on an equality. Any words or clauses which
are ambiguous, uncertain, or which tend to doubtful
meaning by modifying each other are to be construed
most strongly against the party who has prepared the
contract and is responsible for the language used. It
is true that recitals are not necessary to a valid con-
tract. The parties might, if they chose, have omitted
them. Plaintiff saw fit to adopt them in framing the
contract, and both parties accepted them. When re-
sorted to in drafting contracts, recitals serve as a pref-
ace or preliminary statement introducing the subject
in relation to which the parties contract, indicating
to a greater or less degree the reason for and intent
of what follows. Recitals are of two kinds, particular

and general. Particular recitals involving a statement of fact are, as a rule, to be treated as conclusive evidence of the fact stated; while general recitals may not be.

It is stated in the beginning that plaintiff owns "the following letters patent," which are definitely designated by number, "relating to the art of welding or otherwise treating metals by electricity," etc., and may secure others, that it is engaged in manufacturing apparatus utilizing the "inventions described in said letters patent, or some of them," and that defendant "desires to acquire the right to use the apparatus so manufactured," and as described in clause 3. Having thus introduced the subject-matter and designated by number said letters patent which plaintiff then owned, and in relation to which it was intended to contract, including in general terms any plaintiff might later secure involving similar inventions, the granting or contracting portion of the instrument follows, stating in close connection that it is to continue in force "until the expiration of all letters patent of the United States now or hereafter owned by the lessor, the invention of which," etc. Thus, following plaintiff's plain enumeration of the possibly applicable patents it then owned, protected by which, or some of them, plaintiff was declared to be manufacturing the apparatus defendant desired to lease, can it be said that the minds of the parties met, or, by fair construction of all the language used in that connection, ought to have met, upon the proposition that it was intended to include other patents, nowhere else described or suggested in the contract, which plaintiff then owned, but refrained from disclosing, or by fair intendment should all the letters patent plaintiff "now" (then) owned be limited by the context to those it particularly enumerated as then owned by it?

It cannot be questioned that the enumeration of pat-

ents then owned by plaintiff is a distinct statement of a material fact related, as the instruments are worded, to the time of their termination. Presumably this was stated for a purpose and intended to be treated as one of the settled facts in the contract:

"Stated in full, the general rule of law appears to be this: A fact agreed or assumed to be true, as the basis of a contract, must be taken to be true, specifically, until the contract itself is lawfully impeached by plaintiff or by defendant, or until some legal proceeding is taken to impeach the truth of the (supposed) fact. * * * In other words, supposing the contract to be lawful and binding, the party or parties (it may be one, it may be all) pledging or justly assuming the fact in question will be estopped from taking any position, to the detriment of other parties, inconsistent with the special fact, except for the purpose of reforming the language of a written contract and making it conform to the real terms of agreement." Bigelow on Estoppel (6th Ed.), p. 495.

It is said in *Torrance* v. *McDougald,* 12 Ga. 526:

"The rule of construction applicable to all writings, Constitutions, statutes, contracts, and charters, public or private, and even to *ordinary conversation,* is this: That general and unlimited terms are restrained and limited by particular recitals, when used in connection with them."

The question here is not whether the language used would, if unqualified by other parts of the contract, be sufficiently definite in an agreement for the use of patented articles to determine the duration of the contract. Authorities cited sustain the contention that it is, but in those cases the contracts under consideration were without recitals so far as shown, and made clear in plain, though general, terms, without any qualification or restricting language, what the undertaking covered in the way of inventions or patents. There the provision for duration of the contracts was no more comprehensive than the licensing clause for use of pat-

ents by the life of which it was to be measured. No question of estoppel by recital was involved in those cases, and there were no conflicting clauses in other parts of the contract which served to limit the general scope of the duration provision. Counsel for plaintiff say in their brief:

"So far as the printed form was concerned, it was necessary for the lessor to choose between giving the lessee no information at all as to the patents which he owned and giving him an enumeration which, however complete at the date when the printed form was drafted, was very likely to be incomplete at the later date at which the particular lease was executed. The incompleteness of the enumeration in the present case is thus a defect which, so far as the printed form is concerned was unavoidable. If the lessee had wished more complete information on the subject, it would have been perfectly easy for it to have asked for it at the time when the lease was executed."

Plaintiff's reason or purpose in adopting this general form, if proven, would be of little significance, unless known and assented to by the opposite party; neither would it have been a serious task when perfecting the form into a contract between these parties to have added to the list the two numbers now claimed as of controlling importance.

In construing written agreements the actual undertaking of the parties is to be deduced from the entire instrument, taking into consideration, reconciling, and giving meaning to all its parts so far as possible, including recitals as well as operative clauses, and, when so considered, language which has a distinct meaning standing alone may, in the connection used, become doubtful or its meaning modified by other parts of the instrument, including particular recitals.

That the introductory declaration enumerating just what patents plaintiff owned at the time the parties contracted is a particular recital of a material fact,

which would be evidence by way of admission when questioned, is evident. The provision for terminating the leases is in general terms of application to all used patents then or thereafter owned by plaintiff without otherwise designating or describing them. , Considering the contract as a whole, the thought is insistent that to ascertain those then owned by plaintiff it would naturally be contemplated and understood by the contracting parties that resort should be had to plaintiff's preceding enumeration in the same instrument of those it did then own. Otherwise the recital but serves to create a wrong impression and mislead the defendant to its detriment. While, as its counsel point out, the recital contains no direct statement that plaintiff does not own any other material patents, its silence in that particular, when enumerating as the subject-matter of the contract a long list of those it did own, by fair inference equates with a declaration that those were all it owned.

We are of opinion that by a fair construction of these instruments considered in their entirety plaintiff is estopped by contract from urging as evidence of their duration patents then owned by it, but not disclosed in the unqualified representations in the recitals of those it did own when the contracts were entered into, and the trial court rightly sustained the objection to their admission in evidence for that purpose.

The judgment is affirmed.

STONE, C. J., and KUHN, OSTRANDER, MOORE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.