ACME CUT STONE CO. *v.* NEW CENTER DEVELOPMENT CORP.

1. APPEAL AND ERROR—ARBITRATION AND AWARD—QUESTIONS REVIEWABLE—STATUTES—VACATION OF AWARD.

Vacation of award of arbitrator on grounds enumerated in statute for doing so, fraud, partiality or misconduct of arbitrator or lack of finality of award, not advanced in bill of complaint or in plaintiffs' brief is not considered on appeal from dismissal of bill to vacate arbitrator's award (3 Comp. Laws 1929, § 15402).

2. SAME—MODIFICATION OF AWARD.

Modification of award of arbitrator on grounds enumerated in statute for doing so, evident miscalculation or mistake in description, consideration of extraneous matters by arbitrators or imperfection of form, is not considered on appeal from dismissal of bill to vacate arbitrator's award where bill was not brought within the terms of the statute (3 Comp. Laws 1929, § 15403).

3. ARBITRATION AND AWARD—AUTHORITY OF ARBITRATOR—DETERMINATION ACCORDING TO CONTRACT RIGHTS—BROAD MORAL PRINCIPLES.

Under agreement to submit claims and counter-claims between builder and stone setters to a circuit judge as arbitrator, pursuant to statute relative to arbitrators, for "determining the relative rights and liabilities of the parties by virtue of the contractual relationship existing between them by virtue of" certain mentioned undertakings, determination of claims of parties in accordance with contractual rights instead of "broad moral principles" in which case a substantially larger amount would have been awarded claimants, *held*, within scope of arbitrator's authority, since he had a right to proceed according to law as long as he did so in good faith (3 Comp. Laws 1929, §§ 15394–15416).

4. SAME—DERIVATION OF POWER.

An arbitrator derives his power solely from the agreement between the parties.

5. SAME—CONTRACTS—DETERMINATION OF RIGHTS.

Under agreement providing that arbitrator was to determine "the relative rights and liabilities of the parties by virtue of the contractual relationship existing between them by virtue of" mentioned undertakings, the arbitrator was bound to determine amount due claimants, not upon what it might be determined was plaintiffs' loss, or defendant's gain, if any, but what would be a just and legal award after taking into consideration the contractual relationship existing between the parties and their performance, or nonperformance, of the terms of their contracts.

6. CONTRACTS—PURPOSE OF RECITALS.

When recitals are resorted to in drafting contracts they serve as a preface or preliminary statement introducing the subject in relation to which the parties contract, indicating to a greater or less degree the reason for and intent of what follows.

7. SAME—PARTICULAR AND GENERAL RECITALS.
   Recitals in contracts are of two kinds, particular and general.

8. SAME—CONSTRUCTION OF RECITALS.
   Particular recitals in a contract involving a statement of fact are as a rule to be treated as conclusive evidence of the fact stated, while general recitals may not be.

9. ARBITRATION AND AWARD—CONTRACT FOR SUBMISSION—RECITALS.
   Recitals of minute differences existing between parties in agreement submitting the matters for determination by an arbitrator *held*, particular, not general, recitals.

10. CONTRACTS—CONSTRUCTION—RECITALS—OPERATIVE CLAUSES.
    In construing written contracts, the actual undertaking of the parties is to be deduced from the entire instrument, taking into consideration, reconciling and giving meaning to all its parts so far as possible, including recitals as well as operative clauses, hence language which has a particular meaning when standing alone may become doubtful or its meaning modified by other parts of the instrument, including particular recitals.

11. ARBITRATION AND AWARD—LAW OF THE CASE.
    Arbitrators derive all their power and authority from the law, the agreement of arbitration being the law of the case.

12. SAME—FRAUD—MISTAKE—AWARD OUTSIDE SCOPE OF AGREEMENT.
    An award based upon the agreement of arbitration must stand, in the absence of fraud or mistake, but an arbitrary award outside the scope of the agreement binds no one.

13. SAME—INTERPRETATION OF AGREEMENT.
    There is nothing peculiar in the rules of interpretation applied to agreements to submit to arbitration.

14. SAME—SCOPE OF DETERMINATION BY ARBITRATOR.
    Under agreement to submit differences between builder and stone setters for arbitration pursuant to statute, which agreement contained recitals of minute details of the differences and authorized determination in accordance with contractual relationship existing between the parties by virtue of certain mentioned contracts, arbitration was restricted to a consideration of such contractual rights both in finding what the rights were and amount to be awarded (3 Comp. Laws 1929, §§ 15394–15416).

Appeal from Wayne; Miller (Guy A.), J. Submitted April 28, 1937. (Docket No. 129, Calendar No. 39,334.) Decided September 1, 1937. Rehearing denied October 13, 1937.

Bill by Acme Cut Stone Company, a Michigan corporation, and Batchelder-Wasmund Company, a Michigan corporation, against New Center Development Corporation, a Michigan corporation, to vacate the award of an arbitrator and for other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Wm. Henry Gallagher,* for plaintiffs.

*Monaghan, Crowley, Clark & Kellogg,* for defendant.

CHANDLER, J. It was agreed between the parties to this cause that their respective claims and counter-claims should be submitted to arbitration, which was accordingly done. For an understanding of the matters in controversy and of the method of submission it is deemed essential to quote in full the agreement of submission entered into between the parties and which was duly executed and acknowledged by them. It is in words and figures as follows:

"Agreement of submission to statutory arbitration, made and entered into this 22d day of January, 1934, by and between Batchelder-Wasmund Company, a Michigan corporation, of Detroit, Michigan, and Acme Cut Stone Company, a Michigan corporation, of the same place, as parties of the first part, and New Center Development Corporation, a Michigan corporation, of Detroit, Michigan, as party of the second part.

"Whereas, second party did in 1927 undertake the erection of a building now known as the Fisher

Building at the northwest corner of Second boulevard and Grand boulevard, Detroit, Michigan; and

"Whereas, the parties of the first part did then orally contract to furnish all labor and material for the setting of the exterior marble, granite and stone work for said Fisher Building (including the garage building annexed to same), and did in 1928 orally contract to furnish all labor and material for the setting of granite and marble work on the Fisher Theatre, erected in conjunction with said Fisher Building; and

"Whereas after the completion of said contract by first parties, certain writings that had been theretofore prepared and submitted to the respective parties, which contracts purported to set forth the terms of the respective agreements, one of which writings bears date February 21, 1928, of which exhibit 'A' attached hereto is a copy, and another of said writings bearing date June 26, 1928, of which exhibit 'B' attached hereto is a copy, were executed, and

"Whereas, it was agreed in said contracts that the maximum amount to be received by first parties for the furnishing of the labor and material required therein was the sum of $306,400; and

"Whereas, first parties performed certain additional work upon request, and have received upon account of said contract and said additional work cash and credits in the sum of $405,972.22; and

"Whereas, first parties claim that additional costs were incurred and damages sustained by them in the performance of said contract as the result of the request, direction, negligence and fault of second party (an itemized statement of the claims of first parties, marked 'exhibit C,' being hereto attached); and

"Whereas, the second party denies each and every of the claims and contentions of first parties and claims fulfillment of its entire contractual obligation to first parties, and upon its part claims damages against first parties in the sum of $2,999,82, with in-

terest from October 10, 1928 to date, for stone broken and damaged by first parties; and

"Whereas, the parties hereto have agreed that the controversy between them, as herein stated, shall be submitted to the Honorable Arthur Webster, judge of the circuit court of the county of Wayne, as arbitrator, for the purpose of determining the relative rights and liabilities of the parties by virtue of the contractual relationship existing between them by virtue of the above-mentioned undertakings;

"Therefore, it is agreed that under the provisions of chapter 45 of the judicature act, the same being sections 15394 to 15416, inclusive, of the Compiled Laws of the State of Michigan, for the year 1929, the above mentioned controversy and issues shall be submitted to the said Honorable Arthur Webster, judge of the Wayne county circuit court, as arbitrator, and that he shall hear and determine the said controversy in the manner and method provided by said chapter 45 of the judicature act, and that when he shall have made a finding and determination with respect to the rights and obligations of the parties hereto and shall have determined the amount, if any, that shall be due to first parties, or shall determine that no amount is due them, or upon his determination that the counter-claim of New Center Development Corporation, as aforesaid, in the amount of $2,999.82, plus interest, or any amount for said item shall be owing by the subcontractor, parties of the first part, to New Center Development Corporation, party of the second part, then his determination in any of these respects shall, except as otherwise provided by the provisions of said chapter 45 of the judicature act, be final and binding upon the parties hereto, and his award, when made, may be filed with the clerk of the Wayne county circuit court for confirmation, and, upon confirmation, judgment shall be rendered in favor of the party to whom the sum of money shall have been awarded by said court, to-

gether with costs thereon as provided in said chapter 45 of the judicature act.

"It is further agreed that the expenses incident to the arbitration, namely, arbitration fees, if any, stenographic services for taking and transcribing the evidence, etc., shall, in the first instance, be paid equally by the parties hereto, with a subsequent reimbursement in favor of the prevailing party."

At the very outset of the proceedings the question of scope of the proceedings or province of the arbitrator came up, and the following colloquy between Judge Webster, the arbitrator, and counsel for the respective parties occurred:

"*Judge Webster:* Well now, again, I will confess to you right now that I have not read the statute about arbitration; I do not recall it; this arbitration is an arbitration of the issues and controversies here based upon legal principles, is it not?

"*Mr. Gallagher:* Yes.

"*Judge Webster:* Mr. Crowley raised the question, he says, 'We do not waive our legal rights,' and this arbitration, I am sitting here, I have to daily pass upon matters based upon the law and legal obligations and not moral or so-called equitable considerations. Now, is this proceeding in the same way, an ordinary proceeding such as you would proceed in court?

"*Mr. Gallagher:* Well, I do not apprehend that any arbitration proceeding is one in which anything but the rights of the parties are involved, whether statutory or otherwise.

"*Judge Webster:* That would be my understanding of it.

"*Mr. Crowley:* That is mine.

"*Mr. Gallagher:* Certainly.

"*Judge Webster:* I just wanted to get that straight, we are not considering moral rights, but legal rights.

"*Mr. Gallagher:* That is right."

Again later in the proceedings, the following occurred:

"*Judge Webster:* Now, coming back here to this proposition, I would like to get the picture of it clearly in my mind, because with all of us—the three of us, at least, here are lawyers, and we are thinking about legal propositions and equitable propositions and such things as that.

"*Mr. Crowley:* I think this record back of that somewhere answers that question. We discussed this very problem once before.

"*Judge Webster:* I know we did.

"*Mr. Gallagher:* There is not any question in my mind. As I have said, we are not standing on any moral ground at all. If we have not any legal rights against them,—

"*Judge Webster:* Legal rights based upon what?

"*Mr. Gallagher:* I am prepared to show you a mass of testimony.

"*Judge Webster:* But generally speaking, based upon the oral contract?

"*Mr. Gallagher:* Based upon the oral contract; and if you are to hold that the written contract is a valid contract, based upon the written contract and based upon the oral contracts made from time to time by Blake; and it might be well to put in your honor's mind that these oral directions by Blake to us to do things, he will see that we are paid, are contracts, each of them are so many contracts.''

A large amount of testimony was taken before the arbitrator, the taking of such testimony continuing from January until May, 1934, the testimony so taken being contained in a transcript of over 2,600 pages.

Sometime after the conclusion of the taking of testimony, January 14, 1935, the arbitrator filed with the clerk of the Wayne county circuit court his findings and conclusions by which he awarded to the claimants the sum of $10,500.

That the testimony taken upon said arbitration and the questions involved therein had most thorough and able consideration by the arbitrator was shown by his opinion filed with said award and consuming over 40 pages of the record in this case. On February 12, 1935, the attorneys for the defendant filed with the clerk of the Wayne county circuit court a motion for the confirmation of said award so submitted and filed as aforesaid. A short time thereafter the attorney for claimants filed with the clerk of said court a motion to vacate said award. Later, on July 12, 1935, a stipulation for the confirmation of the award was filed by the attorneys for the respective parties.

On the same day an order denying the motion to vacate and to confirm the award made in said proceedings was entered in the Wayne circuit court.

On October 4, 1935, the plaintiffs herein, being the claimants in the arbitration proceeding, filed their bill of complaint praying for the following relief:

"That the award of the arbitrator heretofore made and filed be vacated and held for naught.

"That if it be determined by this court that said contract of arbitration was general and not limited in nature, that then this court fix a just award between the parties hereto, or refer said matter back to the arbitrator for that purpose, as justice may require.

"That if it be determined that said arbitration contract provided for an arbitration limited in nature to be governed by law, that then the court determine the correct legal principles applicable to the facts submitted to said arbitrator and make an award in accordance therewith, or refer said matter back to said arbitrator for that purpose, as justice in the case may require.

"That plaintiffs may have such other and further relief as to the court shall seem meet."

The said plaintiffs in their bill of complaint complain that the arbitrator did not determine the issues in controversy submitted to him by the ordinary rules governing arbitration proceedings; that said arbitrator determined that he was obliged to decide the issue presented to him in accordance with the law; that said arbitrator erroneously construed the contract between the parties as a matter of law; that said arbitrator disregarded the rules and laws governing arbitrations, and decided the issues involved in accordance with his conception of the law upon the assumption or determination that he was limited by the terms of the contract of arbitration to a determination of said issues and controversies in accordance with the law which would be applicable in court to the respective rights and liabilities of the parties; that said arbitrator misconceived the law applicable to the facts submitted to him; did erroneously apply legal principles to said facts, and did determine said issues and controversies contrary to the law. The arbitrator was charged with many other errors in said bill of complaint, which so far as applicable, will be hereinafter considered. Defendant after denying all of the allegations in plaintiffs' bill moved for the dismissal of the bill of complaint for the following reasons:

"That the grounds and reasons as set out in plaintiff's bill of complaint in the herein-entitled cause have been fully presented to the circuit court for the county of Wayne upon the occasion of plaintiffs' motion to vacate the award of the arbitrator, which motion was denied and award confirmed, and that all of said matters are, therefore, *res judicata* and cannot be then raised in the form of a bill in equity.

"That, as appears from the face of the bill, as filed, no grounds exist or are alleged by reason of which a court of equity is justified in setting aside

the award, as made, and the confirmation thereof in the circuit court.

"That the plaintiffs have and had upon the denial of their motion to dismiss the award a full, adequate and complete remedy at law.

"That the plaintiffs have by stipulation barred themselves from seeking further relief in any form whatever, they having stipulated and agreed 'that defendant's motion for confirmation of the award, as made, may be granted,' and that by reason of this consent to the confirmation of the award, so made, they are precluded from bringing any further action at law or in equity, looking towards a reversal of the award."

The trial court dismissed the bill of complaint.

The statute provides:

"Any party complaining of such award, may move the court designated in such submission, to vacate the same, upon either of the following grounds:

"1. That such award was procured by corruption, fraud, or other undue means;

"2. That there was evident partiality or corruption in the arbitrators, or either of them;

"3. That the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear any evidence, pertinent and material to the controversy; or any other misbehavior by which the rights of any party shall have been prejudiced;

"4. That the arbitrators exceeded their powers, or that they so imperfectly executed them, that a mutual, final and definite award on the subject matter submitted, was not made." (3 Comp. Laws, 1929, § 15402.)

There is no claim made either in the bill of complaint or plaintiffs' brief that the award should be vacated for any of the foregoing reasons.

The statute further provides:

"Any party to such submission, may also move the court designated therein to modify or correct such award, in the following cases:

"1. Where there is an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property referred to in such award;

"2. Where the arbitrators shall have awarded upon some matter not submitted to them, not affecting the merits of the decision upon the matter submitted;

"3. When the award shall be imperfect in some matter of form, not affecting the merits of the controversy; and where, if it had been a verdict, such defect could have been amended or disregarded by the court, according to the provisions of law." (3 Comp. Laws, 1929, § 15403.)

The bill of complaint is not brought within the terms of said section 15403.

The statute also provides:

"Nothing contained in this chapter shall be construed to impair, diminish, or in any manner to affect the power and authority of any court of chancery, over arbitrators, awards, or the parties thereto; nor to impair or affect any action upon any award, or upon any bond or other engagement to abide an award." (3 Comp. Laws, 1929, § 15415.)

The determination of this case depends entirely upon the inherent jurisdiction of a court of chancery over the awards of arbitrators.

. The arbitration agreement in question clearly indicates that the parties were desirous of having their contractual rights determined and their liabilities thereunder, if any. The agreement so shows, and they selected a well-known circuit judge with well-known knowledge of the law and of reputed fairness. The contract referred to in the arbitration agree-

ment, and the arbitration proceedings, clearly indicate that neither of the parties were desirous that the arbitrator should take into consideration any moral principles that might be involved, but that he should determine the respective rights and liabilities of the parties by virtue of their contractual relations.

. The plaintiff contends that the submission agreement was a general one, and that the arbitrator was mistaken as to his authority thereunder; that he made his award believing that he was limited to determine the issue between the parties in accordance with such legal principles as were applicable to the questions submitted. We are not in accord with the contention that the arbitrator was mistaken as to the scope of his authority. We believe that a proper construction of the arbitration agreement is that the arbitrator may proceed to determine the contractual rights of the parties as he deems fit. It was incumbent upon the arbitrator to act in good faith. Under the terms of the submission he had a right to proceed according to law. There is no contention but what he acted in good faith. The award made by the arbitrator is based upon his determination from the facts in the case as to what he thought the liability of the defendant was to the plaintiffs under the contracts referred to and made a part of the arbitration agreement. In concluding his award, the arbitrator made the following statement:

"Perhaps it is not improper to add that I have felt bound by the very terms of the arbitration agreement to decide the issues on the basis of the contractual rights of the parties under the contracts set forth in the arbitration documents, rather than on what might be termed broad moral principles. Had I been considering the questions from the latter standpoint, I would have been inclined, because of

the manner in which the building was rushed to completion and the co-operation of the stone setters in the effort to keep the work to schedule, to have given them a substantially larger award, possibly a figure in the neighborhood of the loss established by the Gurd audit. But the arbitrator is dealing with contractual rights; and in even suggesting such a thing as moral rights is going beyond his sphere.''

It was by virtue of this statement that plaintiffs contend that the arbitrator was mistaken as to the scope of his authority under the arbitration agreement. The arbitrator determined that he had no right to make any determination on what might be termed "broad moral principles," and that he was bound by the terms of the arbitration agreement to decide the issues on the basis of the contractual rights of the parties under the contracts set forth in the arbitration document.

Courts in this jurisdiction and others have universally held that the arbitrator derives his power solely from the agreement between the parties. Applying that rule here, we must hold that the arbitrator was bound to determine the amount due plaintiffs, not upon what it might be determined was plaintiffs' loss, or defendant's gain, if any, but what would be a just and legal award after taking into consideration the contractual relationship existing between the parties and their performance, or nonperformance, of the terms of the contract or contracts that they had entered into.

Counsel for appellants contend that the power of the arbitrator and any limitations and restrictions on the same must be found in the next to the last paragraph of the arbitration agreement, which paragraph follows the recitals in the contract as to the claims of the parties, and that this paragraph is the

only source of the arbitrator's authority and jurisdiction, and that by analyzing this counsel insists that it contains three elements, *viz:*

"1.    It defines the subject matter as 'the above mentioned controversy and issues.' This refers back to the recital of our (a) undertaking the erection of a building, (b) the making of an oral contract, (c) the signing of a written contract after the work had been done, (d) our 'claim that additional costs were incurred and damages sustained by them in the performance of said contract as a result of the request, direction, negligence and fault of the second party,' as per itemized statement of claim, and (e) the counter-claim of defendant.

"2.    It identifies the arbitrator.

"3.    It provides for statutory, as distinct from a common-law arbitration. (Statutory arbitration differs from common-law merely in that it prescribes certain forms of procedure culminating in a court judgment; the statute in no wise defines, fixes, extends or limits the authority of the arbitrator.)"

Counsel contends from the foregoing analysis that the contract of arbitration is, so far as the authority of the arbitrator is concerned, totally devoid of any limitations or restrictions, that it lays down no rule of guidance for him, that the term "as arbitrator" is the sole creation of his authority, that it is neither preceded or followed by any condition, restriction or limitation. In other words, it appears to be the contention of counsel that the recitals of a contract are not to be treated as a part thereof, but that the contracting parties are bound solely by that portion of the agreement of their undertaking contained in, as counsel expresses it, "the terms creating and stating the contract." The parties to this agreement might, had they chosen, have omitted the recitals contained in their agreement, but whoever drafted the contract

in question saw fit to include therein these recitals, that is, as to what the differences involved were, and both parties to this arbitration agreement accepted them. This court has held:

"When resorted to in drafting contracts, recitals serve as a preface or preliminary statement introducing the subject in relation to which the parties contract, indicating to a greater or less degree the reason for and intent of what follows. Recitals are of two kinds, particular and general. Particular recitals involving a statement of facts are, as a rule, to be treated as conclusive evidence of the facts stated; while general recitals may not be." *Thomson Electric Welding Co.* v. *Peerless Wire Fence Co.,* 190 Mich. 496.

We do not think it can be seriously contended that the recitals in the arbitration agreement under consideration, in view of the minute details of the differences existing between the parties, are general and not particular. We shall treat them as particular recitals. In *Thomson Electric Welding Co.* v. *Peerless Wire Fence Co., supra,* it is said:

"In construing written agreements the actual undertaking of the parties is to be deduced from the entire instrument, taking into consideration, reconciling, and giving meaning to all its parts so far as possible, including recitals as well as operative clauses, and, when so considered, language which has a distinct meaning standing alone may, in the connection used, become doubtful or its meaning modified by other parts of the instrument, including particular recitals."

We call attention to the last recital before the operating clause of the contract, "Whereas the parties hereto have agreed that the controversy between them, as herein stated, shall be submitted to

the Honorable Arthur Webster, judge of the circuit court for the county of Wayne, as arbitrator, for the purpose of determining the relative rights and liabilities of the parties by virtue of the contractual relationship existing between them by virtue of the above mentioned undertakings." Considering the recitals in this contract, which we find to be particular ones, and the operating clause thereof together, in connection with the colloquy between the arbitrator and counsel hereinbefore referred to, we are constrained to hold that Judge Webster as arbitrator was not in error in determining that he was bound by the terms of the arbitration agreement to decide the issues between the parties on the basis of their contractual rights under the contract set forth in the arbitration documents rather than on what might be termed "broad moral principles." He was by this arbitration agreement dealing with the contractual rights of the parties and limited by said agreement to a determination thereof based on the existing contracts between the parties.

This principle was recognized by this court in the case of *Stowe* v. *Mutual Home Builders Corp.*, 252 Mich. 492, where, speaking through Justice POTTER, we said:

"Arbitrators derive all their power and authority from the law. The agreement of arbitration entered into between the parties is the law of the case. An award based upon the agreement of arbitration must stand, in the absence of fraud or mistake."

In the same case, we further said:

"An arbitrary award outside of the scope of the agreement of arbitration is not binding upon anyone, because it has no legal sanction. It is clear in this case that the thing submitted to arbitration was

the amount due on a written contract. This has not been determined.''

The agreement in the instant case was that the contractual obligations of the parties should be determined, and an award made accordingly. To have made an award based on any proposition other than what the contractual rights and obligations of the parties were would have been beyond the scope of the arbitration agreement and the authority given the arbitrator by the terms thereof.

In 2 R. C. L. p. 365, it is stated:

''There is nothing peculiar in the rules of interpretation applied to agreements to submit to arbitration. As in the case of all agreements the courts seek to give effect to the intent of the parties as evidenced by the agreement itself. * * * It is possible for the parties in the agreement to limit the scope of the arbitration in any way that is desired.''

Here, they saw fit to limit the scope to a determination of what the contractual rights and obligations of the parties were and the amount that should be awarded.

The order confirming the award will stand, and the decree dismissing the bill of complaint in this cause is affirmed, with costs to the defendants.

Fead, C. J., and North, Wiest, Bushnell, Sharpe, and Potter, JJ., concurred. Butzel, J., did not sit.