# STATE OF MICHIGAN

# COURT OF APPEALS

DANIEL DEVINE,

   Plaintiff-Appellant,

v

BLOOMFIELD TOWNSHIP and LEO SAVOIE,

   Defendants-Appellees.

UNPUBLISHED
May 30, 2017

No. 330947
Oakland Circuit Court
LC No. 2015-149016-CK

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Plaintiff, Daniel Devine, appeals as of right from the trial court's order dismissing his claim against defendants, Bloomfield Township and Leo Savoie, under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*., pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief may be granted). For the reasons set forth below, we affirm.

## I. RELEVANT FACTS

This matter arises from alleged animosities among members of Bloomfield Township's government. At the time of the events at issue, plaintiff had served as Bloomfield Township Treasurer since 1999, having been appointed to fill a vacancy and then elected or re-elected by public vote several times thereafter. On May 24, 2011, plaintiff and four members of the Bloomfield Township board[1] signed a document titled "Administrator Employment Contract," which contains the following provisions relevant to the instant appeal:[2]

---

[1] The latter presumably signed on the entire board's behalf.

[2] The contract is part of plaintiff's pleadings pursuant MCR 2.113(F)(2). MCR 2.113(F)(2) provides that an exhibit attached or referred to under subrule (F)(1)(a) or (b) is a part of the pleading for all purposes. Subrule (F)(1)(b) states: "If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading as an exhibit unless the instrument is in the possession of the adverse party and the pleading so states[.]" Plaintiff stated in his amended complaint, and defendants do not dispute, that the contract is in defendants' possession.

PRINCIPLES UNDERLYING THE AGREEMENT

The Township desires to maintain high standards of quality and service to the community.

The Township is desirous of employing you on the terms and conditions set forth below and you agree to be employed by the Township upon those terms and conditions.

CONTRACT

Therefore, in consideration of the matters set forth herein and the mutual benefits and obligations set forth in this Contract, the receipt and sufficiency of which is acknowledged by the Township and the undersigned employee, the parties to this Agreement agree as follows:

1.  Employment.  The Township hereby employs you in your current position with such duties and responsibilities in accordance with the statutory obligations, rules, policies, and oversight responsibilities requisite to your position.

2.  Terms of Employment.  Employee agrees to be bound by the rules of conduct and procedures promulgated by the Township, including those set forth in the Bloomfield Township Employee Handbook, as these rules and procedures may be changed from time-to-time.

3.  Compensation.  Employee will be paid his or her respective rate of compensation in existence as of March 31, 2011 in conjunction with the Employee Handbook.  You will be paid pursuant to the Township's normal payroll practices by direct deposit.  Any increase or decrease in salary shall be in accordance with the prevailing law relative to township elected officials.  You will be employed as a full-time employee and you will generally be expected to work at least 40 hours per week.  As a salaried employee you are not compensated for overtime.

\* \* \*

10.  Employment.  You shall serve in your current position subject to the will of the electorate expressed by a majority of voters in regularly scheduled elections, or unless recalled pursuant to lawful procedure governed by prevailing law or until you leave the employment of the Township by resignation, retirement or death.

\* \* \*

12.  Term.  The term of this Agreement shall be from April 1, 2011 to March 31, 2017.  At the end of the term of this Agreement set forth above, the Township may, at its sole discretion, modify, extend or terminate this Agreement in

conjunction with prevailing law relating to township elected officials' compensation and statutory obligations. . . .

\* \* \*

15. Entire Agreement. This Agreement reflects the entire agreement between the parties and all prior discussions, negotiations and understandings have been incorporated herein. This Agreement supersedes and cancels all prior agreements and understandings, whether written or verbal, between the parties. [Ex. 1 to Defendant Bloomfield Township's motion for summary disposition, LCF; Ex. 3 to plaintiff's brief on appeal.]

In addition to the foregoing, the contract entitled plaintiff to participate in the health insurance benefits and pension plan available as of March 31, 2011, retiree healthcare available to new hires after May 1, 2011, and vacation, sick leave, and other benefits as set forth in the Bloomfield Township Handbook.

In 2011, the board's supervisor announced his retirement with 15 months remaining of his term of office. Both defendant Savoie, who was a trustee at the time, and plaintiff sought the board's appointment to become the Township's next supervisor. On July 25, 2011, the board selected Savoie.

In August 2014, plaintiff filed a campaign finance complaint against Savoie with the Michigan Department of State, alleging that Savoie's campaign finance committee "accepted a $2,500 contribution from Hubbel, Roth & Clark, Inc.," in violation of statutory prohibitions of corporate campaign contributions to campaign finance committees. Plaintiff further insinuated that the contribution might have been a bribe. Plaintiff also informed the Secretary of State and the board of trustees that the funding for a sewer extension project violated one of the Township's ordinances. The Department of State investigated plaintiff's allegations and found that Savoie had not violated any campaign finance laws.

Plaintiff alleges that Savoie, as Bloomfield Township supervisor, proceeded to engage in an ongoing campaign against him for having reported violations of law or regulations by defendants to public bodies, and that Savoie "intensively solicited and conspired with other members" of the board to support him in "pursuing retaliatory actions intended to destroy [plaintiff's] reputation and ability to effectively function as Treasurer and ultimately, to oust him from the Treasurer position." According to plaintiff, at an April 13, 2015 meeting of the board of trustees, Savoie impugned the quality of his work and proposed that the position of treasurer be reduced from full-time to part-time. On May 1, 2015, two days after Savoie had allegedly verbally berated plaintiff in plaintiff's private office, plaintiff's 24-year old daughter went missing. Plaintiff reported to the Bloomfield Township police that his daughter may have been kidnapped, and further suggested that her disappearance might be related to Savoie's campaign to "run [him] out" and to his recent angry outburst in plaintiff's office.[3] Plaintiff alleges that

---

[3] Plaintiff's daughter was found later the same day, safe and unharmed.

-3-

Savoie found out about what he reported to the police. In June 2015, a person Savoie had hired to analyze the township's organization reported at a board meeting that "all of the department heads . . . distrusted and disliked working with [plaintiff]." Plaintiff alleges that Savoie criticized plaintiff at that time, claiming he would never be on the "team," and complained about plaintiff having filed the campaign finance complaint against him.

On July 31, 2015, at a regular meeting of the township's board, five of the seven[4] members of the board signed a document titled "Resolution of Censure of Dan Devine, Township Treasurer" (censure resolution).[5] The censure resolution read in relevant part:

> WHEREAS, [plaintiff] is the duly-elected Treasurer of the Charter Township of Bloomfield, and
>
> WHEREAS, as Treasurer [plaintiff] is charged with a fiduciary duty to exercise sound judgment, and
>
> WHEREAS, during his term of office it has been brought to the attention of the Township Board that there have been purportedly serious irregularities attributable to the Township Treasurer and as a result the Township Board has found it necessary to take action. Furthermore, the expectation of the Board of Trustees is that the Treasurer will be competent to serve the residents of the community and exercise care, diligence, integrity, fidelity and sound judgment in keeping with established Township practices, and
>
> WHEREAS, the conduct of [plaintiff] has brought both ridicule and embarrassment to the Township Board and to the citizens of Bloomfield Township, and
>
> WHEREAS, as set forth below, it is the belief and opinion of the Township Board that the Treasurer's conduct rises to the level of official misconduct and willful neglect of duty, and
>
> WHEREAS, while the Township Board recognizes the office of the Treasurer is an elected position and respects the election process, the Board has statutory and fiduciary duties to insure that that Treasurer's conduct is appropriate and lawful.

---

[4] One of the two board members who did not sign the document was plaintiff himself. The other refraining board member asked for additional time to review the matter and allow plaintiff an opportunity to properly respond.

[5] Although he does not attach it to his amended complaint, plaintiff stated that the censure resolution was in defendants' possession; therefore, the resolution is part of the pleadings pursuant to MCR 2.113(F)(2).

NOW, THEREFORE, BE IT RESOLVED that the Township Board of the Charter Township of Bloomfield hereby censures its Treasurer, [plaintiff], for his official misconduct in office consisting of the following facts, to wit:

1.   Falsely stating that the Township Supervisor had approved a $30,000.00 bonus for a retired employee[6];

2.   Baseless allegations that the Supervisor had kidnapped his daughter;

3.   Baseless allegations to the Secretary of State that the Supervisor had violated campaign finance laws and had accepted a bribe from a long-time vendor;

4.   Questionable investment decisions relating to the fees payable to Schwartz and Company[7];

5.   Conduct causing department heads and employees to feel uneasy and threatened in a potentially unsafe work environment as a result of the Treasurer's conduct.

On September 10, 2015, plaintiff filed suit against defendants, claiming a right to recovery under the WPA. He alleged that he was an employee within the meaning of the WPA, that Bloomfield Township was his employer, that Savoie was the township's supervisor and acted as an agent of the township within the meaning of the WPA, that plaintiff had engaged in

---

[6] Plaintiff denies this charge. According to plaintiff's amended complaint, Savoie agreed to pay the township's retiring finance director for six months after his retirement in exchange for the director's completion of specific special projects and assistance in the transition to a new finance director. Although the outgoing director did not complete one of the projects assigned to him, Savoie approved payments to him totaling $31,747.50. According to plaintiff, it was a different trustee, not plaintiff, who raised questions about payments to the outgoing director at an April 13, 2015 meeting.

[7] According to plaintiff's amended complaint, the township had retained Gregory J. Schwartz & Company (Schwartz) as an investment advisor since 2006. In November 2013, Bloomfield Township issued over $80 million in bonds and directed Schwartz to invest the proceeds on behalf of the Township's pension fund. Schwartz did so, and received $491,153 in concession fees from mutual fund managers. The township ultimately approved all of Schwartz's investment recommendations. Plaintiff "worked closely with Schwartz relative to the investments and ongoing oversight of the funds." In December 2013 (which we note was nine months before plaintiff filed a campaign finance complaint against Savoie), Savoie questioned whether Schwartz had been overcompensated and, without plaintiff's knowledge, retained a law firm to investigate the matter. After an investigation, the law firm issued a report stating that Schwartz's fees were reasonable and in keeping with what other investment brokers would have received. The Township paid $17,574.75 for the report.

protected activities by reporting violations or suspected violations of law by defendants to public authorities, and that the censure resolution constituted a retaliation of the type prohibited by the WPA. Specifically, plaintiff argued that the board's intentional use of the phrase "official misconduct and willful neglect of duty" constituted a threat of discharge because it alleged behavior for which the governor could remove him from office pursuant to MCL 168.39.[8]

In lieu of filing an answer, defendants filed separate motions for summary disposition pursuant to MCR 2.116(C)(8), asserting that plaintiff was an elected official, not an employee under a contract of hire entitled to protection under the WPA, and that plaintiff had failed to allege a discriminatory or retaliatory employment action prohibited by the WPA. Agreeing with defendants' reasoning, the trial court granted their motions for summary disposition.

II. ANALYSIS

A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The trial court granted defendants' motions for summary disposition pursuant to MCR 2.116(C)(8). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). We "accept as true all factual allegations supporting the claim, and any reasonable inferences or conclusions that might be drawn from those facts." *Gorman v American Honda Motor Co*, 302 Mich App 113, 131; 839 NW2d 223 (2013). We construe well-pled factual allegations in a light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). "A motion under MCR 2.116(C)(8) may be granted only when the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. at 435 (quotation marks and citation omitted). We also review de novo the interpretation of a statute, *Whitman v Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013), or contract, *Employers Mut Casual Co v Helicon Assoc, Inc*, 313 Mich App 401, 404; 880 NW2d 839 (2015).

---

[8] MCL 168.39 states in relevant part:

The governor shall remove a township officer chosen by the electors of any township, when the governor is satisfied from the evidence submitted that the officer has been guilty of official misconduct, wilful neglect of duty, extortion, habitual drunkenness, or has been convicted of being drunk, or when it appears by a certified copy of the judgment of a court of record of this state that the officer, after the officer's election or appointment, was convicted of a felony. The governor shall not take action upon the charges made against the officer until the charges are exhibited in writing, verified by the affidavit of the party making the charges that the party believes the charges to be true. The officer shall not be removed for misconduct or neglect until charges of the misconduct or neglect are exhibited to the governor as provided in this section, a copy of the charges served on the officer, and an opportunity given to the officer of being heard in his defense.

B. CONTRACT OF HIRE

On appeal, plaintiff contends that the trial court erred in concluding that the administrator employment contract was not a contract of hire, and thus, ruling that plaintiff was not an employee for purposes of the WPA as a matter of law. We disagree.

To be entitled to the protection of the WPA, plaintiff first must be an employee for purposes of the WPA. The WPA defines "employee" as "a person who performs a service for wages or other remuneration *under a contract of hire*, written or oral, express or implied. Employee includes a person employed by the state or a political subdivision of the state except state classified civil service." MCL 15.361(a) (emphasis added). The WPA does not define "contract of hire," but appellate courts have addressed the phrase in the context of workers' compensation claims. In *Higgins v Monroe Evening News*, 404 Mich 1, 20; 272 NW2d 537 (1978)," Michigan's Supreme Court concluded that a contract of hire requires a bargained-for-exchange. There must be a "legal detriment that has been bargained for and exchanged for the promise. The two parties must have agreed to and intended that the benefits each derived be the consideration for a contract." *Id*. at 20-21.

To support his contention that he was a Bloomfield Township employee as defined by and protected under the WPA, plaintiff stresses language in the contract stating that the township "is desirous of employing" plaintiff, and plaintiff "agree[s] to be employed" on the terms and conditions set forth in the contract, as well as the 29 times variations of the word "employ" may be found in the contract. Further, he notes that the contract provides that he will be subject to Bloomfield's Employee Handbook, paid in conjunction with Bloomfield's normal payroll policies and eligible to participate in Bloomfield's employee health care and pension programs, and will receive vacation, sick leave, and other benefits in accordance with the Employee Handbook.

It is a principle of contract interpretation that, "[i]n construing written agreements the actual undertaking of the parties is to be deduced from the entire instrument, taking into consideration, reconciling, and giving meaning to all its parts so far as possible . . . ." *Thomson Elec Welding Co v Peerless Wire Fence Co*, 190 Mich 496, 505; 157 NW 67 (1916). Plaintiff executed the contract at issue while serving as the elected treasurer of Bloomfield Township. Accordingly, when the township stated its desire to "employ" plaintiff in his current position at his current salary to fulfill his current responsibilities, even if such agreement added the status of "employee" to that of "elected official," the agreement was not a contract of hire because, as the trial court pointed out, about these things the board had no choice. With regard to plaintiff's position and salary, the contract merely memorialized the status quo.[9]

---

[9] Further, as Michigan's Supreme Court observed long ago,

Public officers are created for the purposes of government. They are delegations of portions of the sovereign power for the welfare of the public. They are not the subjects of contract, but they are agencies for the state, revocable at pleasure by

Plaintiff contends, however, that the contract is a contract of hire because in it he agreed to duties *beyond* his statutory obligations as treasurer in exchange for compensation beyond his statutorily governed treasurer's salary. Plaintiff asserts that this bargained-for exchange is memorialized in the contract provision stating that Bloomfield Township employs him to perform "such duties and responsibilities in accordance with the statutory obligations, *rules, policies, and oversight responsibilities* requisite to [his] position" (emphasis added). Reading the italicized text as referencing duties separate from his statutory obligations, plaintiff asserts that he agreed to perform these duties in exchange for healthcare, pension, and other benefits. We deem plaintiff's interpretation of the provision strained and unpersuasive.

A contract must be read as a whole. *Thomson Elec Welding Co*, 190 Mich at 505. Reading the contract at issue as a whole reveals that Bloomfield Township "employs" plaintiff in his current position—township treasurer—to do work that accords with his position. The contract acknowledges that plaintiff generally serves at the will of the electorate and any changes in salary "shall be in accordance with the prevailing law relative to township elected officials." Nothing in the contract indicates that the township is "employing" plaintiff in any capacity other than that of the township's treasurer, a position to which he was duly elected. Therefore, reconciliation of the phrase "rules, policies, and oversight responsibilities requisite to [his] position" with the contract as a whole requires interpreting the phrase as referring to the "rules, policies, and oversight responsibilities" necessary to fulfill plaintiff's statutory obligations as treasurer.[10]

Further, even if some of the duties plaintiff contends he has undertaken exceed those necessary to fulfill his statutory obligations, nothing in this contract reveals them as elements in a bargained-for exchange. Moreover, nothing in the language of the contract or in plaintiff's amended complaint indicates that the contract was specific to plaintiff, rather than one that any— or every—elected township official signed upon election to office. The contract's non-specific language makes it suitable for an elected official to agree to be "employed" at his or her "current position" tied to his or her "respective rate of compensation," to perform duties "requisite to [his or her] position," to "serve at the will of the electorate," and to have one's pay adjusted "in accordance with the prevailing law relative to township elected officials."

Even if plaintiff may be considered an "employee" by virtue of the contract, nothing in the administrator employment contract supports a reasonable inference that it made plaintiff an employee of the township for purposes of the WPA. " 'The underlying purpose of the WPA is protection of the public.' " *Anzaldua v Neogen Corp*, 292 Mich App 626, 631; 808 NW2d 804, 808 (2011), quoting *Dolan v. Continental Airlines/Continental Express,* 454 Mich 373, 378, 563 NW2d 23 (1997). The WPA "meets this objective by protecting the whistleblowing employee

---

the authority creating them, unless such authority be limited by the power which conferred it. [*Attorney Gen v Jochim*, 99 Mich 358, 367-368; 58 NW 611(1894).]

[10] We also note that the censure resolution criticizes plaintiff for his "Treasurer's conduct" amounting to (in the belief and opinion of those who signed it) "official misconduct in office," that occurred "during his term of office." The resolution does not identify or appear to relate to any failings in any pursuits outside of plaintiff's role as the "duly-elected Treasurer."

and by removing barriers that may interdict employee efforts to report violations or suspected violations of the law." *Anzaldua*, 292 Mich App at 631 (quotation marks and citation omitted). Whistleblowers typically require protection because they are vulnerable to the adverse employment decisions of those whose violations of the law they report or threaten to report. See, e.g., *Terzano v Wayne County*, 216 Mich App 522; 549 NW2d 606 (1996) (affirming judgment under the WPA for an electrician at a county operated airport terminated before end of his probationary period because he reported electrical violations committed by the airport to the city electrical inspector). For example, MCL 41.75a authorizes a township's board to hire employees that "shall serve at the pleasure of the township board and shall perform duties lawfully directed by the township board, except those duties delegated by law to another township official, unless there has been consent." Employees hired under the authority of MCL 41.75a might find themselves in the position of being whistleblowers subject to retaliatory measures, and therefore in need of the protection of the WPA.

In the instant case, however, none of the barriers envisioned by the WPA existed to prevent plaintiff from reporting "violations or suspected violations of the law" to a public body. The board could not discharge, or even credibly threaten to discharge, plaintiff from his position as treasurer, see MCL 168.369 (setting forth the requirements and conditions under which the governor alone could remove plaintiff), or decrease his compensation during his term of office, MCL 41.95(7). Further, as previously stated, the choice of treasurer belonged not to the board, but to the electorate, from whom one might expect to garner political support by reporting a violation or suspected violation of the law. Therefore, even if one could consider plaintiff an employee as well as an elected official of Bloomfield Township, nothing in the contract at issue establishes an employment relationship casting plaintiff in the role of an employee who, but for the protections afforded employees under the WPA, would be deterred from reporting violations or suspected violations of the law.[11]

Plaintiff contends that the WPA's definition of "employee" is broad enough to encompass public officials. We disagree. This Court has not been receptive in the past to enlarging the category of employee for purposes of the WPA beyond that clearly intended by the Legislature, and we decline to do so now. See e.g., *Chilingirian v City of Frazer (On Remand)*, 200 Mich App 198, 200; 504 NW2d 1 (1993) (concluding that the attorney who represented the city was not an employee for purposes of the WPA because he did not operate under a contract of hire and the city paid for his service through his law firm).

III. CONCLUSION

For the reasons stated above, we conclude that trial court did not err in granting defendants' summary disposition pursuant to MCR 2.116(C)(8) on the ground that the contract upon which plaintiff relies is not a contract of hire such as to establish him as an employee for

---

[11] This is not to say that an elected official who agrees to perform additional duties in exchange for extra compensation can never be considered an employee for purposes of the WPA, just that plaintiff's pleadings have not established that such is the case here.

-9-

purposes of the WPA. In light of our resolution of this issue, we need not address whether the censure resolution was the type of adverse employment act prohibited by the WPA.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro