## DETROIT GRAND PARK CORP. *v.* TURNER.

1. CONTRACTS — CONSTRUCTION — AMBIGUITY — CONTEMPORANEOUS EVENTS.

   In construing an ambiguous agreement, the court may consider the conditions that existed at or about the time the instrument was entered into.

2. SAME—DISCHARGE—CONSIDERATION—STATUTES.

   Pursuant to statute the discharge of any part of any obligation is not invalid because of absence of consideration providing the discharge is in writing and signed by the party against whom it is sought to enforce such discharge (Act No. 238, § 1, Pub. Acts 1941).

3. SAME—WAIVER OF INTEREST.

   Agreement between corporation owning a large hotel then in dire financial straits, trust company that had advanced a large sum individually and was also trustee for holders of obliga-

---

* See Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–1, Stat. Ann. 1946 Cum. Supp. § 17.220).—REPORTER.

tions owed by the corporation, and the lessors under two
99-year leases of land upon which part of the hotel stood,
which recited the amount of the obligations owed the lessors
and trust company whereby the latter two parties agreed,
among other things, that their claims were of the same class
and on an equal basis and that they were to share in future
distributions by way of liquidation or otherwise in proportion
to the amount of their respective claims, exclusive of interest,
*held,* to have waived any claim for interest against the corpo-
ration, particularly in view of further recital that all parties
recognized the difficulties confronting the corporation and all
desired to continue the operation of the hotel (Act No. 238,
§ 1, Pub. Acts 1941).

4. Same—Construction of Recitals.

Particular recitals in a contract involving a statement of fact
are as a rule to be treated as conclusive evidence of the fact
stated, while general recitals may not be.

Appeal from Wayne; Webster (Clyde I.), J. Sub-
mitted October 17, 1946. (Docket No. 43, Calendar
No. 43,457.) Decided December 2, 1946.

Separate actions of assumpsit by Detroit Grand
Park Corporation, a Michigan corporation, against
James Turner and another, trustees under will of
Max C. Koch, deceased, and Margaret L. Palmer
and others, trustees under will of Abbie S. Longyear,
deceased, for the recovery of interest paid without
prejudice to right to bring a subsequent action.
Cases consolidated for trial and appeal. Judgment
for plaintiff. Defendants appeal. Affirmed.

*Shapero & Shapero,* for plaintiff.

*Angell, Turner, Dyer & Meek,* for defendants.

Butzel, C. J. In the discussion of the questions
presented herein, we also refer to a large part of the

record in *Detroit Trust Co.* v. *Mason,* 309 Mich. 281, to which the attention of the trial judge was repeatedly called and which he considered at the hearing of the present case. The Tuller Hotel was built on slightly more than eight and one-half lots in a downtown section of Detroit. Sixty feet of the hotel fronts on Grand Circus Park. Other lots including the defendants' properties have a frontage on West Adams avenue. The fee of all of the property with the exception of the 60 feet on which the rear portion of the hotel was built became the property of the Tuller Hotel. Two parcels of 30 feet each, one abutting the other, and constituting the 60 feet set forth in the two leases involved in this suit, are respectively owned by the Koch estate and the Longyear estate, whose trustees are the defendants herein. Their decedents on June 14, 1922, gave 99-year leases to a party through whom by mesne assignments plaintiff herein became assignee. The lease for each 30 feet provided for a rental of $6,000 per year until June 14, 1932, $7,000 per year for 10 years until June 14, 1942, and $8,000 per year for the balance of the term. Each lease provided that the lessee should pay all taxes, assessments, et cetera, as they became due, and in the event of nonpayment, the lessor might pay such taxes, assessments, et cetera, and that amounts so paid should become due on the next succeeding day for payment of rent and the lessee should pay the amount in full plus 7 per cent. interest from the time of the payment by the lessors to the time of repayment by the lessee. The question involved in the present case is whether such interest was subsequently waived or not.

The hotel project proved a failure. The foreclosure of a mortgage securing a bonded indebtedness of $3,500,000 was begun in 1929. The property

was bid in by the Detroit Trust Company, trustees for the bondholders. The property later was deeded to plaintiff but subject to all the indebtedness which plaintiff assumed. The shares in plaintiff corporation had been substituted for the corpus of the trust, but the corporation remained liable for all debts. All of its stock was assigned as additional security to the Detroit Trust Company which had advanced the sum of $384,639.86 in order to preserve the trust property. This indebtedness was a prior claim due to the trust company before the bond or certificate holders would share in the proceeds, if any, from the sale of the trust property. There was due the lessors, defendants herein, under the two leases an amount stated to be "approximately $94,000," which had been paid by lessors for taxes and assessments against the respective leasehold properties. Prior to November 6, 1942, there was also due to the respective lessors interest at the rate of 7 per cent. on the amounts so advanced for taxes and assessments from the date of such advances by them.

On November 6, 1942, the Detroit Trust Company as first party, respective defendant trustees as second party, and plaintiff Detroit Grand Park Corporation as third party entered into an agreement which is referred to as exhibit 14 in the record. We shall only set forth such provisions of the agreement so far as they affect the issues in this case.

"Whereas, the Koch estate and Longyear estate have heretofore asserted claims in the total amount of approximately $94,000 against the trust assets for unpaid rental and taxes with respect to that portion of the property owned by said estates and Detroit Trust Company has a claim against said assets for its advances to the trust in the amount of $384,639.86, * * * and

"Whereas, Detroit Grand Park Corporation assumed and agreed to pay the Koch estate and Long-

year estate the amount of their lawful claims against the trust assets and the Detroit Trust Company the sum of $384,639.86 aforesaid, * * * and

"Whereas, Detroit Grand Park Corporation executed and delivered to Detroit Trust Company a chattel mortgage upon all personal property in the hotel as security for the claims aforesaid for the purpose of continuing and securing to said claimants their respective rights in and to such personal property though for convenience said chattel mortgage runs only to Detroit Trust Company; and

"Whereas, Detroit Grand Park Corporation purchased that part of the hotel property acquired by the State of Michigan at the State land sale held pursuant to Act No. 155, Pub. Acts 1937, as amended,* and entered into a land contract with the State of Michigan for the purchase thereof, which contract provides for the payment of the balance of the purchase price in monthly instalments, the total sum to be paid on or before October 27, 1951; and

"Whereas, the parties hereto recognize the difficulties confronting the corporation because of limited finances, taxes and costs of operation and maintenance and desire to agree upon a plan which will permit the corporation to continue the operation of the hotel.

"Now, therefore, it is agreed by and between the parties hereto as follows:

"(1) Detroit Grand Park Corporation during the period of its occupancy of that part of the Tuller Hotel property owned by the Koch estate and Longyear estate shall pay as rental for the Koch estate property $7,000 per year and for the Longyear estate property $7,000 per year. * * *

"(2) The Koch and Longyear estates agree that they will not take any proceedings to collect or enforce their respective claims heretofore asserted as above set forth so long as Detroit Trust Company

---

* See Comp. Laws Supp. 1940, 1942, § 3723–1, *et seq.*, Stat. Ann. 1942 Cum. Supp. § 7.951 *et seq.*—Reporter.

does not take proceedings to collect or enforce its claim * * *

"(3)   Detroit Trust Company and the Koch and Longyear estates agree that their respective claims are of the same class and on an equal basis and that they shall share in any and all proceeds of liquidation of the Tuller Hotel property or other distribution made available to them as creditors, whether by way of liquidation of the corporation or otherwise, *pro rata*, in proportion to the amount of their respective claims (exclusive of interest) and if at any time in the future Detroit Trust Company shall foreclose its chattel mortgage and sell the personal property encumbered thereby or acquire such personal property by foreclosure and resell the same, the sum of the net proceeds of any such sale be distributed *pro rata* between Detroit Trust Company and the Koch and Longyear estates in proportion to the amount of their respective claims.

"(4)   At any time during the period of postponement of their claims as provided in paragraph (2) hereof, the Koch and Longyear estates agree to settle and discharge the total amount of their claims aforesaid upon payment of the amount thereof less $40,000 and whatever payments have been paid on account thereof prior to the date of settlement. ·

"(5)   Detroit Grand Park Corporation has heretofore assumed and does hereby assume any and all lawful claims aforesaid of the Koch and Longyear estates and is liable therefor, but Detroit Trust Company in its individual corporate capacity is not liable to said estates for the amount thereof.''

At the time exhibit 14 was entered into, the hotel project was in desperate condition.   Over 13 years had elapsed since the bondholders, who later became certificate holders, had received any return whatsoever from their investment.   There was due the trust company in its individual capacity the sum of $384,639.86, which the latter had loaned to the trust

in order to pay taxes and other charges. There was
due the State of Michigan the sum of $284,135 on
the contract of purchase entered into by plaintiff
at the "scavenger" sale. In addition to a large
amount due for taxes not yet paid by anyone, the
plaintiff owed defendants a large sum for taxes
which the lessee had failed to pay in accordance with
the 99-year leases and which the lessors paid. Prior
to entering into exhibit 14, plaintiff also owed de-
fendants interest at the rate of 7 per cent. per annum
on the amounts paid by lessors for taxes.

In construing exhibit 14, if it is at all ambiguous,
we may consider the conditions that existed at or
about the time exhibit 14 was entered into. How-
ever, to more fully comprehend the distressed con-
dition of the property, we must briefly state that
less than five months after the date of exhibit 14, the
trust company, in a petition to the court, agreed to
accept $108,000 in full payment of its claims of more
than $384,000, and also asked the court to permit
the acceptance of an offer for the sale of the hotel
property including the leasehold which would net
but very little to the former bondholders, now cer-
tificate holders. It was stated in the petition that
unless the offer were accepted, both the trust com-
pany and the bond or certificate holders might lose
their entire investment. The court ordered the ac-
ceptance of the trust company's offer of settlement,
and also asked for new bids so as to realize more
for the bond or certificate holders. The hotel
property, which included the leaseholds, was sold by
transferring the stock of the plaintiff corporation,
and the price realized was sufficient to settle with
the trust company and pay the State of Michigan
and other debts, also to net the holders of the cer-
tificates an amount far in excess of the offer first
made by the trust company in its petition. It should

be stated that defendants' estates could not suffer such a large loss as other creditors for they still owned the fee to their properties and could recover possession of them even though the leases were terminated and defendants' large claims for amounts advanced for taxes were not paid. However, in the event of the termination of the lease, each estate would be entitled to the return of its respective 30 feet of land. The building on each 30 feet could be partitioned off but the hotel building on the remainder of the land held in fee would still have a considerable depth. These facts are pointed out in appellee's brief to a certain extent and are indirectly shown by the record. We call attention to them so as to explain the last of the recital clauses in exhibit 14 showing the realization by all the parties of difficulties that confronted plaintiff because of limited finances, taxes, cost of operation and maintenance and the desire to agree upon a plan which would permit the corporation to continue the operation of the hotel.

The sale of the corpus of the trust necessitated the transfer of the stock of plaintiff corporation to new owners, but there was no change in the entity of the corporation. Thereafter defendant trustees demanded of plaintiff the full amount of the sums they had advanced for taxes together with interest at the rate of 7 per cent. per annum from the date of such advances until the repayment thereof. Two suits were brought by defendant trustees for an amount which had been set forth in exhibit 14 as "approximately $94,000," but which in fact aggregated $96,055.02, and also for an additional amount aggregating $36,694.25 for interest at 7 per cent. per annum on the amounts advanced for taxes. The defendants conceded that in accordance with paragraph 4 of exhibit 14, the amount claimed to be due

them should be reduced by the allowance of $40,000. Plaintiff, thereafter, entered into a new agreement by which the two suits were discontinued on the payment of the full amount demanded for principal and interest, but with the express proviso that such payment less the $40,000 was made and received by defendants subject to the outcome of a judicial determination whether defendants' estate waived interest by exhibit 14. In Act No. 238, § 1, Pub. Act 1941 (Comp. Laws Supp. 1945, § 13433–1, Stat. Ann. 1946 Cum. Supp. § 26.978 [1]), it is particularly provided that the discharge of any part of any obligation shall not be invalid because of absence of consideration providing such discharge is in writing and signed by the party against whom it is sought to enforce such discharge.

Was interest waived when in the recital clause of exhibit 14 the total amount due the two estates was stated to be "approximately $94,000?" Although the correct amount due for principal was $96,694.25, or $2,694.25 more than $94,000, the latter sum was approximately correct, and we do not take the word "approximately," under the circumstances, to mean a figure over $130,000 which would be the amount if over $36,000 for interest were added to $94,000. Later, at the time of the settlement of the suits brought by defendant trustees, it was agreed that $95,000 was the correct amount that would be due defendants after the deduction of $40,000 discount, provided they were entitled to interest. This would make the original amount $135,000 before the discount, not "approximately $94,000." After the payment of the $95,000 plaintiff in turn brought two suits to recover the large sum representing interest which it had paid without prejudice to its right of recovery in a subsequent proceeding. The trial court held that the interest had been waived by ex-

hibit 14 and rendered a joint judgment against the two estates in the amount of $38,704. The cases presented the same issue, were tried together, and brought to this Court on appeal as one case. The attorney for defendants stated that the cases might be considered as one and if it were eventually held that the two estates were liable, a joint judgment would be paid as defendants were prepared to make repayment if the Court rendered an adverse decision.

Each party claims that exhibit 14 is so plain and unambiguous as not to require any additional testimony or reference to any other records in order to explain it. Plaintiffs claim that when the agreement was entered into, it settled the status of the respective parties. They contend that when the two estates stated in the recital clause that their claims were approximately $94,000 against the trust assets, and agreed to settle and discharge the claims at a discount of $40,000, there was not the faintest intimation that the contract did not disclose their full agreement, and in stating the claim to be approximately $94,000, defendants waived interest. Clause 4 refers to a discount of $40,000 off the total amount of defendants' "claims aforesaid." The "aforesaid" claim is set forth in the recital clause at "approximately $94,000." The trial judge stated that this was conclusive. Defendants, on the other hand, point to the fact that the very next clause in the recital states that "whereas, Detroit Grand Park Corporation assumed and agreed to pay the Koch estate and Longyear estate the amount of their lawful claims against the trust assets," and the 5th clause states that "Detroit Grand Park Corporation has heretofore assumed and does hereby assume any and all lawful claims aforesaid," et cetera. They maintain that these two clauses mean that the plaintiff was obligated to pay all lawful claims which

would include interest. It will be noticed however, that in referring to the claims in the 5th clause, the word "aforesaid" is used. Plaintiff claims that this refers back to the recital clause where the amount of the claim is set forth at approximately $94,000. Defendants contend that if approximately $94,000 was to be paid without interest, the contract would have so stated. On the other hand, plaintiffs answer that if the statement of the claim at approximately $94,000 also reserved interest, the words "and interest" would have been added. Both the trial judge and the plaintiff stress clause 3 where both the trust company and the estates agreed that their respective claims are of the same class and on an equal basis, and that they shall share the distribution *pro rata* in proportion to their respective claims "exclusive of interest." Defendants claim that was an agreement exclusively by the other two parties and in which plaintiff had no interest. We cannot overlook the fact that the agreement was entered into by the three parties and that clause 3 does tend to explain the amount then claimed by defendants herein. A careful consideration leads us to the conclusion that interest was waived in the recital clause, and that the judge was correct in holding in plaintiffs' favor.

The importance of a particular recital clause in an agreement is discussed in *Acme Cut Stone Co.* v. *New Center Development Corp.*, 281 Mich. 32 (112 A. L. R. 865), in which we held that particular recitals in a contract involving a statement of fact are as a rule to be treated as conclusive evidence of the fact stated, while general recitals may not be. Also, see *Thomson Electric Welding Co.* v. *Peerless Wire Fence Co.*, 190 Mich. 496, to like effect.

In coming to our conclusion, we take into consideration that, if there is any ambiguity, the last recital clause in exhibit 14 states that the parties

recognize the difficulties confronting plaintiff because of limited finances, taxes, cost of operation and maintenance, and a desire to agree upon a plan that would permit the corporation to continue the operation of the hotel. There can be no question but that the outlook for the hotel's future at the time was dismal, and while it is true that defendant lessors could at all times recover possession of their property, nevertheless they each had only 30 feet on which the rear of the hotel stood, and if the respective parcels of 30 feet each were partitioned off, it might be very doubtful whether the two estates could realize the comparatively large rental agreed upon with plaintiff. Even, however, if there was an ambiguity in the agreement, many provisions of which we have quoted, we cannot overlook a previous letter written by the attorneys for both defendants in January of the same year in which exhibit 14 was entered into. At that time they offered a $30,000 discount and stated in a letter that "such balance shall be paid without interest. * * * Upon completion of such payments the $30,000 credit shall be allowed, and the claim considered paid in full." Certain conditions stated in the letter never arose. The proposal also was contingent upon rehabilitation of the hotel and approval of the probate court. No new contract was entered into on the basis of this letter. When later in the year exhibit 14 was executed and the amount of the discount increased to $40,000, it seems very unlikely that it was even contemplated to exact interest amounting to $35,000, or thereabouts, without mentioning it. It is true that the letter was not a final contract, but it does indicate what defendants later had in their minds when they stated that their claims amounted to approximately $94,000. We believe that defendants in their desire to see the hotel continue operations

intended to and did waive interest, and that the lower court was correct in holding for plaintiff.

Judgment affirmed, with costs to plaintiff.

Carr, Bushnell, Sharpe, Boyles, Reid, North, and Dethmers, JJ., concurred.