PEOPLE, *ex rel.* CLARDY, *v.* BALCH.

1. OFFICERS—CONSTITUTIONAL LAW—PUBLIC UTILITIES COMMISSION-
    ERS.

    Members of the public utilities commission are not judicial
        officers within the meaning of that term as used in article 9,
        § 7, of the Constitution excepting judicial officers from re-
        moval from office by governor, although commission has stat-
        utory power to ascertain facts and make orders thereon and
        has been referred to as a *quasi*-judicial body.

2. SAME—TRANSFER OF RIGHTS, POWERS AND DUTIES—STATUTES.

    Rights, powers and duties of railroad commission transferred to
        public utilities commission by statute organizing it are those
        which may be exercised and performed by the commission
        and do not include right of member to 10-day notice from
        governor of hearing on removal to which railroad commis-
        sioners were entitled (2 Comp. Laws 1929, §§ 11008, 11018
        *et seq.*).

3. CONSTITUTIONAL LAW—REMOVAL OF PUBLIC OFFICER.

    Constitutional provision permitting governor to remove public
        officer from office for gross neglect of duty, for corrupt con-
        duct in office, misfeasance or malfeasance is self-executing and
        requires no legislation to make it effective (Const. 1908, art.
        9, § 7).

4. OFFICERS—OPPORTUNITY TO DEFEND REMOVAL PROCEEDNGS.

    Public officer into whose acts governor makes inquiry on petition
        for removal is entitled to reasonable opportunity to make de-
        fense (Const. 1908, art. 9, § 7).

5. SAME—NOTICE—HEARING—REMOVAL—JURISDICTION.

    Notice served on public utilities commissioner on February 9th
        of hearing to be held February 14th on petition for his re-
        moval *held*, sufficient to give governor jurisdiction of removal
        proceedings where commissioner neither filed answer to peti-
        tion nor requested further time within which to make his
        defense but merely appeared specially and moved to dismiss
        petition (Const. 1908, art. 9, § 7).

6. SAME—MEMBER OF COMMISSION—FAILURE TO ACT.

    Governor, in proceedings to remove member of public utilities
        commission for gross neglect of duty, has right to assume that

each commissioner participated in the work of the commission, in absence of proof to the contrary, as each of the members is chargeable with its failure to act.

7. SAME—MERGER OF OFFICIAL ACTION BY INDIVIDUAL MEMBERS OF COMMISSION.

Right to remove member of public utilities commission is not affected by fact that official action of its different members is merged into the official action of the commission itself as an entity.

8. SAME—REMOVAL—PLEADING.

Allegations in petition for removal of certain members of public utilities commission for gross neglect of duty *held*, sufficient statement of fact, which, if proved, would justify governor in making order removing them, including relator in instant *quo warranto* proceedings.

9. SAME—REMOVAL—NEGLECT OF DUTY—EVIDENCE.

Removal of public utilities commissioners by governor based on allegations in petition therefor and supported by competent evidence that commissioners failed to act with reasonable promptitude on application for rate reduction in village and on a number of applications for permits under motor vehicle carrier statute *held*, justified in absence of denial or explanation on part of commissioner sought to be removed (Act No. 212, Pub. Acts 1931).

10. CARRIERS—EXTENSION OF CREDIT FOR FEES.

Discretion vested in public utilities commission by Act No. 212, § 5, Pub. Acts 1931, even if construed as applicable to permission to motor vehicle carrier to operate without previous payment of fee required by statute, did not warrant extension of credit to carriers of upwards of $25,000 with much of it months later uncollected or uncollectible and justified finding of governor that commissioners violated official duty in doing so.

*Quo warranto* proceedings by the people of the State of Michigan, on the relation of Kit F. Clardy, against James B. Balch to try title to the office of member of the public utilities commission. Submitted June 12, 1934. (Docket No. 40, Calendar No. 37,802.) Writ dismissed July 2, 1934.

*O. L. Smith,* for plaintiff.

*Patrick H. O'Brien,* Attorney General, *Gerald K. O'Brien,* Deputy Attorney General, and *M. Thomas Ward,* Assistant Attorney General, for defendant.

NELSON SHARPE, C. J. The public utilities commission of this State consists of five members, appointed by the governor. They hold office for the term of four years. (2 Comp. Laws 1929, § 11006.) On February 8, 1934, a petition, signed by three citizens, was presented to the governor, William A. Comstock, in which three of the members of the commission, one of whom was Kit F. Clardy, the plaintiff in this proceeding, were charged with "gross, wilful and habitual neglect of duty" and "malfeasance and misfeasance in office," and their removal prayed for. The governor gave written notice that he would proceed with an examination of witnesses in relation thereto at his office on the 14th day of February, 1934, beginning at 10 o'clock in the forenoon of that day. A copy thereof was duly served on the three commissioners on February 9, 1934. It appears that the resignations of the other two commissioners were then in the hands of the governor.

At the time set for the hearing, counsel for the plaintiff, appearing specially for him, filed motions to dismiss, which were denied. During their consideration, plaintiff's counsel stated that "we would like the record to be positive and certain that we have appeared specially on each and every one of the motions, and objections and requests that we have heretofore made," and they took no further part in the proceedings. A number of witnesses were then sworn, and at the conclusion of the hearing on that day, the governor, apparently being

satisfied that the evidence was sufficient to justify the removal of plaintiff, asked his counsel if they desired a further hearing, and stated that, if they did not, plaintiff would be summarily removed, to which no positive reply was made. On convening the next morning, the governor asked if plaintiff was represented, and, it appearing that he was not, the governor announced that an order would be entered removing him from membership on the commission, and a written order to that effect was signed by him and filed with the secretary of State on that day. Soon thereafter, the governor appointed James B. Balch, the defendant herein, a public utilities commissioner, and he duly qualified and took formal possession of the office on February 26, 1934. His appointment was confirmed by the State senate on the 8th day of March following. Thereupon the plaintiff petitioned this court for leave to file an information in the nature of a *quo warranto* to test the right of the defendant to hold such office. Such leave was granted and the information filed, to which the defendant has filed his answer.

The questions raised by the motions to dismiss which are discussed by counsel may be stated as follows:

1. Constitution precludes removal.

2. Notice insufficient and unreasonable.

3. Charges are all directed to the members of the commission, and not to plaintiff in his individual capacity.

4. Charges must state facts, not conclusions.

1. Article 9, § 7, of our Constitution, reads as follows:

"The governor shall have power and it shall be his duty, except at such time as the legislature may

be in session, to examine into the condition and administration of any public office and the acts of any public officer, elective or appointive; to remove from office for gross neglect of duty or for corrupt conduct in office, or any other misfeasance or malfeasance therein, any elective or appointive State officer, except legislative or judicial, and report the causes of such removal to the legislature at its next session.''

Counsel for the plaintiff urges that the members of the commission are within the exception noted in this provision; that in the performance of their duties they are acting ''in a legislative or a judicial or *quasi*-judicial capacity.'' This claim is based upon a statement in the opinion in *Rapid Railway Co.* v. *Michigan Public Utilities Commission,* 225 Mich. 425, 428 (P. U. R. 1924B, 585), that ''It is an official board, and its orders certainly are of a *quasi*-judicial nature.''

The term ''*quasi*-judicial'' is not found in any of our laws. When the power is conferred by statute upon a commission such as the public utilities, or a board such as the department of labor and industry, to ascertain facts and make orders founded thereon, they are at times referred to as *quasi*-judicial bodies, but their members are in no sense judicial officers within the meaning of that term as used in the exception in the constitutional provision. It clearly refers to the judicial officers provided for therein.

2. The act creating the Michigan railroad commission (Act No. 300, Pub. Acts 1909, 2 Comp. Laws 1929, § 11018 *et seq.*) contained the following:

Section 2 (b). ''The governor may at any time remove any commissioner for any neglect of duty or malfeasance in office. Before such removal, he shall give such commissioner a copy of the charges

against him, and shall fix a time when he can be heard in his own defense, which shall not be less than ten days thereafter.''

The act creating the Michigan public utilities commission (Act No. 419, Pub. Acts 1919), in section three thereof (2 Comp. Laws 1929, § 11008), provides that:

''All the rights, powers and duties now vested by law in said railroad commission shall be deemed to be transferred to and vested in said public utilities commission and shall be exercised and performed thereby, except as herein otherwise provided.''

We are not impressed that the word ''rights'' used therein was intended to refer to the 10-days' notice in the railroad commission act, as claimed by plaintiff. The ''rights, powers and duties'' vested in the railroad commission are such as can, and shall, be ''exercised and performed'' by it.

The constitutional provision is self-executing. It requires no legislation to make it effective. *Dullam v. Willson,* 53 Mich. 392, 400 (51 Am. Rep. 128). The grant of power to the governor is coupled with the duty enjoined on him to examine into the acts of any public officer. When doing so, the officer must have a reasonable opportunity to make his defense.

Article 9, § 8, of the Constitution provides:

''Any officer elected by a county, city, village, township or school district may be removed from office in such manner and for such cause as shall be prescribed by law.''

The distinction is apparent. In *People, ex rel. Johnson, v. Coffey,* 237 Mich. 591, 598 (52 A. L. R. 1), this court said:

''The provision of the Constitution, basic law made by the people themselves, constitutes the gov-

ernor the sole tribunal in such cases. No right of appeal or review is given. If he acts within the law his decision is final.''

The hearing was set by the governor for February 14th. The notice thereof was served on the plaintiff on February 9th. Counsel claims that the time was insufficient in which to prepare his defense. Had he filed an answer to the petition, or requested additional time to do so, or at the conclusion of the hearing on the first day had he requested further time in which to make his defense, a different question would be presented. But, apparently, relying upon the motions filed in his behalf, his counsel informed the governor that they desired the record to show positively that they appeared specially and in support of the motions only. Under the record before us we cannot say that the time between the service of the notice and the day of hearing was so unreasonable as to oust the governor of jurisdiction to hear the petition.

3. The charges set forth in the petition allege gross neglect of duty on the part of the members of the commission. Counsel urges that a charge upon which removal is predicated must be directed against the individual members and that ''before such a charge can involve any individual member, it must be further alleged and proved that he has refused to take part in the necessary work involved in reaching an agreement as to the order of the commission to be issued.''

When considering applications for licenses or other matters in which authority to act is conferred upon the commission, the parties interested have no knowledge of the action of the individual members in relation thereto. The record discloses the action taken by it. Its failure to act is apparent and, in the

absence of proof to the contrary, each of its members is chargeable therewith. On the hearing, the plaintiff might have testified or submitted proof that the neglect charged should not be attributed to him personally. The governor had the right to assume that the plaintiff participated in all of its proceedings, as it was his duty to do.

In *Attorney General, ex rel. John T. Rich, Governor, v. Jochim,* 99 Mich. 358 (23 L. R. A. 699, 41 Am. St. Rep. 606), three State officers, who acted under the statute as *ex officio* members of the board of State canvassers, were removed from office by the governor for gross neglect of duty in that they failed to personally canvass the election returns from the various counties of the State and declare the result. The proceedings for removal were not against them as individuals, but as officers "composing the board of State canvassers." The charges in this case were preferred against the three commissioners as "members of the Michigan public utilities commission."

Counsel calls our attention, and with seeming reliance thereon, to the rule as stated in 22 R. C. L. p. 487,—

"That a public officer, who is a member of a corporate body upon which a duty rests, cannot be held liable for the neglect of duty of that body."

The case of *Monnier v. Godbold,* 116 La. 165 (40 South. 604, 5 L. R. A. [N. S.] 463, 7 Ann. Cas. 768), is cited in support thereof. In that case an action for damages was brought against the individual members of a board of pharmacy for their refusal to register the plaintiff as a pharmacist, and the court held that:

"The official action of its different members is merged into the official action of the board itself as an entity."

The liability sought to be imposed in that case was a civil one. This holding would in no way affect the right of removal for a violation of the duties of the office. 46 C. J. p. 1043.

4. A consideration of several of the charges, hereafter set forth at length, discloses that there is no merit in this contention.

Are the charges of such a nature, and were they supported by sufficient competent evidence, to justify the order of removal?

The people of this State have the right to expect efficient service on the part of officers entrusted by law with the administration of its affairs. The duties imposed on the public utilities commission by the statute call for, not only ability on the part of its members, but reasonably prompt and faithful service. Good faith and right action are at all times required, not only by the State, from which they receive their compensation, but by the persons necessarily dealing with them under the provisions of the law.

The fifth paragraph of the petition reads as follows:

"That, on or about the 7th day of February, 1933, the city of Dowagiac filed a petition for a rate reduction against the Michigan Gas & Electric Company. A hearing was held on April 17, 1933, in which the three members of the commission named above were present. At determination of the hearing the chairman ordered briefs to be filed by all parties interested. It appears from the records and files of this case that the last brief was filed on or about May 11, 1933. To date there has been no decision in this case, although approximately eight months have passed. This results in an unwarranted delay contrary to public interest."

In support thereof, Clint Voorhees, the superintendent of public works of the city of Dowagiac, testified: .

"Some citizens of Dowagiac filed a petition February 7, 1933, and had a hearing thereon. The Michigan Gas & Electric Company, who supply electric current, was the defendant. We asked for a rate reduction and an appraisal. There has been no decision so far as I know. I believe I would know if one had been made. The hearing was held April 17, 1933."

The eighth paragraph reads:

"That said Michigan public utilities commission and the said members thereof were charged by statute with the duty of administering the bus and truck transportation laws and in so doing the said commissioners favored the interests of common carriers, prejudicial to the interest of contract and private carriers, and were habitually negligent of the fulfilment of their statutory duties in the administration of the said law in that they continually took and held fees filed with applications by contract and private carriers for long periods of time without justification and without making any decision of such applications, particularly in the cases of applications filed by one Bert Kraack, Zeeland, Michigan; C. E. Stoner, Fayette, Ohio; C. H. Williams, Leonard, Michigan; Roy Schnepp, Raco, Michigan; Peter Boer, Holland, Michigan; Ray E. Hough, Grand Ledge, Michigan; and the Nelson Truck Lines, % Glen Nelson, 351 Richardson Avenue, Detroit, Michigan."

This allegation was supported by the testimony of Peter Boer, Roy Otis Schnepp, Ray E. Hough and Charles H. Williams. A consideration of their testimony by the governor justified a finding that the commission failed to act upon their applications

for licenses as private carriers with reasonable promptitude and kept in its possession the fees tendered by them for licenses for an unreasonable length of time, and had not granted the licenses or returned the fees at the time of the hearing.

The ninth paragraph reads:

"Petitioners allege upon information and belief, and charge the fact to be, that said members of the public utilities commission extended credit to various licensees and to public utilities within the State of Michigan in an amount of $25,000 and upwards for fees for the right to operate trucks upon the highways and for fees for audits and appraisals, contrary to the practice of the Michigan public utilities commission, and contrary to the law of the State of Michigan."

The evidence disclosed that on April 20, 1933, one of the commissioners, Edward T. Fitzgerald, sent to the office of the attorney general a statement of fees due the State for licenses issued by the commission to operators of truck lines to the amount of $25,284.12. Of this amount, $11,123.93 had been collected at the time of the hearing; $1,994.07, written off as uncollectible, and the balance then unpaid. It appears that more than 40 of such licenses had been issued without requiring the payment of the statutory fee therefor.

The statute fixes the fees to be paid for such licenses. Section 5 of Act No. 212, Pub. Acts 1931, which provides for the fees to be charged in certain cases, contains the following proviso:

"*Provided, however,* That no such carrier shall be entitled to such permit nor be permitted to operate upon the highways of this State while in default in the payment of the fees herein required or of any other provision of law or while refusing or failing

to comply with the orders of the commission with respect to their vehicles or operations, except in the discretion of the commission.''

Counsel contends that under it ''the commission may require payment of the fees in advance or that it may in its discretion waive that requirement.'' It may seem doubtful whether the exception does not apply to the orders of the commission only, but, if also applicable to the payment of fees, the extension of credit to the amount stated warranted the governor in finding that it was in ''violation of the duties of said members of the commission.'' Were the number of persons to whom the credit was extended but few, and but a comparatively small amount due the State, there would be force in the contention. But, if such a discretion be conferred, it cannot with any degree of fairness be said to extend to so many licenses and to such an amount as is above stated. The purpose of the statute, when considered in the light of its other provisions, is to secure to the State a certain fee for the right to engage in the business for which the license is granted. Circumstances might arise which would permit the commission to issue the license without immediate payment, but in any event the payment should have been enforced within a reasonable time.

The plaintiff was an appointive officer. Under the constitutional provision the governor not only had the power, but it was his duty, to remove him from office under the charges preferred if the evidence submitted established gross neglect of duty on his part. The object to be attained thereby was not to punish the plaintiff, but to improve the public service. The three charges above considered specifically stated facts which, if true, warranted a finding that the members of the commission were

guilty of such neglect in their administration of the law under which they were appointed. There was competent evidence to establish the truth of these charges, and in the absence of any denial or explanation on the part of the plaintiff we cannot say that the removal of plaintiff from the office of commissioner was not justified thereby.

The petition contained other charges of neglect of duty on the part of the members of the commission, but, in view of the conclusion reached, we find it unnecessary to consider them.

We close by quoting from the opinion in *Attorney General, ex rel. John T. Rich, Governor,* v. *Jochim, supra,* written by Mr. Justice HOOKER (pp. 377, 378):

"While there is an inclination upon the part of the average American to accept good intentions as an excuse for mistakes, it is not for the general public good that responsible public offices shall be confided to, or remain in the custody of, those whose duties and responsibilities rest so lightly upon them as to permit the public interests to be injured or endangered through neglect; and when such neglect, from the gravity of the case, or the frequency of the instances, becomes so serious in its character as to endanger or threaten the public welfare, it is gross, within the meaning of the law, and justifies the interference of the executive, upon whom is placed, by this amendment, the responsibility of keeping the affairs of State in a proper condition. We cannot think that the term 'gross neglect' means only intentional official wrongdoing. Such acts would hardly be described by the word 'neglect.' "

The writ is dismissed. No costs will be allowed.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.