# STATE OF MICHIGAN

# COURT OF APPEALS

---

ANTHONY V. MARROCCO,

      Plaintiff-Appellee,

v

OAKLAND MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT, JIM NASH, and
MICHAEL GREGG,

      Defendants-Appellants.

UNPUBLISHED
June 16, 2016

No. 326575
Macomb Circuit Court
LC No. 2013-002615-CZ

---

ANTHONY V. MARROCCO,

      Plaintiff-Appellant,

v

OAKLAND MACOMB INTERCEPTOR DRAIN
DRAINAGE DISTRICT, JIM NASH, and
MICHAEL GREGG,

      Defendant-Appellees.

No. 327614
Macomb Circuit Court
LC No. 2013-002615-CZ

---

Before: TALBOT, C.J., and MURRAY and SERVITTO, JJ.

PER CURIAM.

In Docket No. 326575, defendants the Oakland Macomb Interceptor Drain Drainage District (OMIDDD), Jim Nash, and Michael Gregg appeal as of right the trial court's opinion and order granting summary disposition in favor of plaintiff, Anthony Marrocco, with regard to Count I of his complaint. In this count, Marrocco alleged that defendants breached a contract between the OMIDDD and Macomb County by failing to approve Warren's request to connect to the Oakland-Macomb Interceptor (OMI). The trial court agreed, granting summary disposition in Marrocco's favor and declaring that Warren was part of the "Service Area" contemplated by the contract. Because the trial court decided a disputed issue of fact on a motion for summary disposition brought under MCR 2.116(C)(10), we reverse and remand for further proceedings regarding this count of the complaint.

-1-

In Docket No. 327614, Marrocco appeals as of right from the same opinion and order to the extent that the trial court granted summary disposition in favor of defendants with respect to Count II of his complaint. In this count, Marrocco sought a writ of superintending control or a writ of mandamus compelling the OMIDDD to take certain actions. With regard to this count, we affirm.

I. FACTS

The OMI is an intercounty drain[1] formerly owned by Detroit. In 2009, the OMIDDD was formed and purchased the OMI. Pursuant to statute, the OMIDDD is governed by a drainage board (the Board) that consists of "the director of the department of agriculture and the drain commissioner of each county involved in the project."[2] The current members of the Board are Marrocco, representing Macomb County; Jim Nash, representing Oakland County; and Michael Gregg, representing the Department of Agriculture.[3] At the time the OMIDDD acquired the OMI, the system was in a serious state of disrepair. The OMIDDD was tasked with rehabilitating the system. An expensive, multi-year rehabilitation project was approved, and is just now nearing completion. The project was funded largely by apportionments paid by 23 communities that connected to the OMI and used it to deliver wastewater to the Detroit Water and Sewerage Department (DWSD).

In 2009, the OMIDDD entered into a contract with DWSD under which the OMIDDD was permitted to direct wastewater to DWSD for treatment at a rate of up to 423 cubic feet per second (cfs). The OMIDDD also entered into agreements with Oakland County and Macomb County, the two counties served by the OMI. Under its agreement with Oakland, the OMIDDD would allow Oakland to direct up to 140 cfs of wastewater into the OMI. Under its agreement with Macomb (the Macomb Agreement), Macomb was permitted to direct up to 283 cfs of wastewater into the OMI.

Warren has never been connected to the OMI. But the city has had its own wastewater collection issues, and at least by 2009, sought to connect to the OMI, believing this would be the most cost-effective method to resolve these problems. Eventually, on March 19, 2013, the Board unanimously approved Warren's request, but subject to the resolution of a number of outstanding concerns. One such concern was the negotiation of an "equitable buy-in" fee that would recognize and account for the fact that Warren had never paid a dollar toward the construction or rehabilitation of the OMI. However, the arrangement apparently reached an impasse shortly thereafter. On June 18, 2013, Marrocco presented a motion to the Board that would have allowed Warren to connect to the OMI without paying any sum toward the rehabilitation project.

---

[1] An intercounty drain is "any drain, irrespective of size, carrying drainage water or sewage in more than 1 county, and includes drains located, established and constructed by a county drain commissioner or drainage board, by a city, village or township." MCL 280.511(e).

[2] MCL 280.514(1).

[3] Nash was preceded by John McCullogh, the former Oakland County Water Resources Commissioner.

The motion was discussed at length, and ultimately failed to gather the support of a majority of the Board. At the same meeting, Marrocco presented a motion that would have transferred the positions of Board Secretary and manager of the rehabilitation project from Nash to Marrocco. After discussion, this motion likewise failed to garner the support of the Board.

A little more than a week later, Marrocco filed the instant suit. In the first count, he contended that under the Macomb Agreement, Warren was entitled to connect to the OMI, and that by failing to approve his motion, defendants were in breach of this agreement. In his second count, he claimed that the Board violated its fiduciary duties to the OMIDDD by failing to appoint Marrocco secretary and project manager. He sought either a writ of superintending control or a writ of mandamus compelling the Board to approve his motion to this effect. After cross-motions for summary disposition, the trial court concluded that, under the Macomb Agreement, Warren was entitled to connect to the OMI. The trial court granted summary disposition in defendants' favor with regard to the second count, concluding that Marrocco was not entitled to either of the writs he sought. The instant appeals ensued.

## II. BREACH OF CONTRACT

We first consider whether the trial court erred when it granted summary disposition in favor of Marrocco with respect to Count I of the complaint. Because it is clear that the trial court decided a disputed factual issue on a motion for summary disposition, we must reverse the trial court's decision with respect to this count.

## A. STANDARD OF REVIEW

Combined, the parties' motions with respect to this count cited MCR 2.116(C)(8), (C)(9), and (C)(10). The trial court did not clearly specify under which of these rules it decided the motion. However, it is clear that the trial court considered evidence well beyond the pleadings, and of the cited court rules, only MCR 2.116(C)(10) allows the trial court to consider anything other than the pleadings.[4] Thus, we consider the motion as having been decided under MCR 2.116(C)(10).[5]

This Court "review[s] de novo a trial court's decision on a motion for summary disposition to determine whether the moving party is entitled to judgment as a matter of law."[6] When reviewing a motion decided under MCR 2.116(C)(10), this Court "review[s] the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact."[7] "The proper interpretation of a contract is

---

[4] See MCR 2.116(G)(5).

[5] *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012) ("[B]ecause the trial court considered documentary evidence beyond the pleadings, we construe the motion as having been granted pursuant to MCR 2.116(C)(10).").

[6] *Id*.

[7] *Id*.

-3-

a question of law," reviewed de novo on appeal.[8] "Whether contract language is ambiguous is a question of law, which this Court reviews de novo."[9]

## B. ANALYSIS

When interpreting a contract, the overarching goal is to ascertain the parties' intent.[10] If the language of the contract is unambiguous, this task is relatively simple: the contract must "be construed according to its plain meaning."[11] But difficulties arise when a contract's language is ambiguous. "A contract is ambiguous when its words may be reasonably understood in different ways."[12] An ambiguity also exists if provisions of the contract irreconcilably conflict.[13] The meaning of an ambiguous contract becomes a factual question.[14] And generally speaking, the parol evidence rule "prohibits the use of extrinsic evidence to interpret unambiguous language within a document. However, if a contract is ambiguous, then extrinsic evidence is admissible to determine the actual intent of the parties."[15]

The relevant question in this matter is whether Warren is entitled to connect to the OMI under the terms of the Macomb Contract. The Macomb Contract provides the following:

> 1. Provision of Services. DRAINAGE DISTRICT agrees to provide wastewater services to COUNTY to transport the sewage from the MCWDD to DETROIT for treatment and disposal and agrees to contract for such services with DETROIT, subject to conditions in the manner as set forth in this Agreement.
>
> * * *
>
> 6. Service Area. The service area of COUNTY is shown in Exhibit A. The service area may be amended upon mutual agreement of the parties but shall not extend beyond its corporate limits except by mutual consent of the parties hereto.
>
> * * *

---

[8] *Coates v Bastian Brothers, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

[9] *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999).

[10] *Shay v Aldrich*, 487 Mich 648, 660; 790 NW2d 629 (2010).

[11] *Id*.

[12] *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 53; 723 NW2d 922 (2006) (quotation omitted).

[13] *Id*.

[14] *Klapp v United Ins Grp Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003).

[15] *Shay*, 487 Mich at 667 (quotation marks and citation omitted).

9. <u>Acceptance of Flow.</u> The DRAINAGE DISTRICT agrees to accept and COUNTY agrees to deliver no less than 70% of all Instantaneous Flow generated within COUNTY's Service Area and existing as of the date of this Contract.

The language above might seem unambiguous. The OMIDDD's obligation is to accept flows from the Service Area. The Service Area, in turn, is defined by a document that was to be attached as Exhibit A. The problem, however, arises because the parties failed to designate or attach a document as Exhibit A to the Macomb Agreement. This leaves the meaning of the Service Area open to dispute. Thus, and as the trial court correctly concluded, the Macomb Agreement contains an ambiguity.

"It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided" by the fact-finder.[16] "Hence, in the context of a summary disposition motion, a trial court may determine the meaning of a contract only when the terms are *not* ambiguous."[17] The trial court, however, explicitly stated that it "examin[ed] the parole [sic] evidence together with other undisputed facts" to interpret the meaning of the agreement. At great length, the trial court discussed a wide variety of evidence submitted by the parties, and then drew its own conclusions regarding what this evidence demonstrated, before concluding that the Service Area was coterminous with Macomb County, and thus, included Warren.

The trial court did so despite the existence of substantial evidence indicating that Warren was not, in fact, intended to be within the Service Area. A number of witnesses closely connected to the negotiation of the agreement testified that the Service Area did not include Warren, and that the Service Area was understood to be less than all of Macomb County. There was evidence suggesting that all involved in the discussions regarding the Warren connection believed that doing so would require the Board's approval. The resolution unanimously adopted by the Board on March 19, 2013, expressly acknowledged that under the Macomb Agreement, "the service area of Macomb County may be amended to include the City of Warren only upon mutual agreement of the [sic] Macomb County and the OMIDDD[.]" Of course, there would be no need to amend the Service Area to include Warren if Warren was already included in the Service Area.[18] There was also substantial evidence indicating that the Service Area under the Macomb Agreement was intended to be the same as depicted by a map prepared by a consulting

---

[16] *Klapp*, 468 Mich at 469.

[17] *D'Avanzo v Wise & Marsac, PC*, 223 Mich App 314, 319; 565 NW2d 915 (1997).

[18] Clearly, the ultimate dispute in this matter is not so much whether Warren may connect to the OMI, but whether it may do so without making a financial contribution to the rehabilitation project. To this end, the same resolution explicitly recognized that one condition of Warren's potential connection was an agreement between the parties for an equitable "buy-in" that took into account the contributions made by those communities that had contributed to this project. This would further tend to show that the parties understood that Warren was not entitled to connect to the OMI under the Macomb Agreement, and instead, would be an addition to the Service Area.

firm, designated as "Figure 1" (the Figure 1 map). This map did not include Warren in any designated area.

There can be no doubt that the trial court resolved a factual dispute at the summary disposition phase. This was error. When deciding a motion brought under MCR 2.116(C)(10), a trial court is not permitted to resolve a factual dispute where the evidence submitted by the parties demonstrates that one exists.[19] "[I]t is [also] well settled that the circuit court may not weigh evidence or make determinations of credibility when deciding a motion for summary disposition."[20] The trial court violated these fundamental precepts when it determined Marrocco was entitled to summary disposition with regard to Count I of the complaint.

On appeal, Marrocco makes several meritless arguments, generally based on a belief that the Macomb Contract contains no ambiguity, but rather, unambiguously provides that all of Macomb County is included within the Service Area. Marrocco first contends that the trial court did not find the contract ambiguous, and instead, without resort to extrinsic evidence, correctly concluded that the contract unambiguously allows all of Macomb County to connect to the OMI. Marrocco's argument is entirely baseless. In a section of its opinion titled, "The Ambiguity or no Ambiguity Question," the trial court stated:

> It is clear the term "service area" lacks specificity in all of the agreements where it is used. It appears to have been the intention of the parties to provide that specificity through the attachment of exhibits to both the Detroit agreement and county agreements, but it never happened. The contracting parties recognized the term needed clarification and context, but failed to provide it. *The concept of a service area under the Macomb agreement can be argued to mean several things and cannot be said to have a generally accepted definition. When that term is applied or executed the several meanings are confirmed. Therefore, extrinsic evidence must be considered to identify the existence of the ambiguity and ascertain the intended meaning of the term. Upon examination of the parole* [sic] *evidence together with other undisputed facts, the Court finds that evidence supports* [*Marrocco*]*'s interpretation of the service area as including the entirety of Macomb County . . . .*

True, the trial court did not flatly say "the contract is ambiguous." But it could not be more clear that the trial court found the contract could be interpreted in different ways, thus making it ambiguous. Further, the trial court plainly found it necessary to review parol evidence in order to interpret the contract. Had the trial court found the contract unambiguous, it would

---

[19] *Lsyogorski v Bridgeport Charter Twp*, 256 Mich App 297, 299; 662 NW2d 108 (2003).

[20] *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 480; 776 NW2d 398 (2009).

have had no occasion, nor would it have been permitted, to rely on extrinsic evidence.[21] Marrocco's suggested reading of the trial court's opinion is absurd.

Marrocco also argues that the Macomb Agreement unambiguously states that the Service Area encompasses all of the Macomb County Wastewater Drainage District (MCWDD), which, at least as far as Marrocco is concerned, includes all of Macomb County.[22] He relies on recitals stated at the outset of the Macomb Agreement, along with a 1966 resolution that defined the MCWDD as encompassing all of Macomb County. It is true that the recitals of the Macomb Agreement discuss the formation of the MCWDD in 1966.[23] But Marrocco places far too much emphasis on mere contract recitals, while essentially ignoring the actual provisions of the agreement. Recitals might be treated as conclusive of the facts stated therein – in this case, that the MCWDD was formed in 1966, along with other background facts.[24] Yet when it came time to define the obligations created by the Macomb Agreement, the parties explicitly agreed that the OMIDDD's commitment to service Macomb County would be "subject to conditions and in the manner as set forth in" the Macomb Agreement.[25] One such condition was that the OMIDDD

---

[21] *Shay*, 487 Mich at 667. Marrocco suggests that the trial court merely referenced this evidence to provide relevant background, and did not rely on it when interpreting the contract. This flies in the face of the trial court's statement that its "examination of the parole [sic] evidence together with other undisputed facts" caused it to "find[] that evidence supports [Marrocco]'s interpretation of the service area . . . ."

[22] This, too, appears to be a fact in dispute. Marrocco himself approved a resolution in May, 2013 purporting to add Warren to the MCWDD. Given that Warren is situated in Macomb County, there would seem to be no need for such a resolution if the MCWDD already encompassed all of Macomb County.

[23] For example, one recital states, "WHEREAS, in 1966 the Macomb County Board of Supervisors . . . authorized and directed that there be established a county system of sewage disposal improvements and services . . . known as the 'Macomb County Wastewater Disposal District . . . .'"

[24] See *Acme Cut Stone Co v New Center Dev Corp*, 281 Mich 32, 47; 274 NW 700 (1937), quoting *Thompson Electric Welding Co v Peerless Wire Fence Co*, 190 Mich 496, 502-503; 157 NW 67 (1916) (" 'When resorted to in drafting contracts, recitals serve as a preface or preliminary statement introducing the subject in relation to which the parties contract, indicating to a greater or less degree the reason for and intent of what follows. Recitals are of two kinds, particular and general. Particular recitals involving a statement of fact are, as a rule, to be treated as conclusive evidence of the facts stated; while general recitals may not be.' ").

[25] Notably, Marrocco fails to recognize the existence of this limiting language in his brief on appeal. Rather, he quotes only the first part of this contractual provision, which refers to the "COUNTY" and the "MCWDD." This Court may not, as Marrocco apparently would, ignore terms stated in the contract. See *Zahn v Kroger Co of Mich*, 483 Mich 34, 41; 764 NW2d 207 (2009) ("Courts may not make a new contract for parties under the guise of a construction of the contract, if doing so will ignore the plain meaning of words chosen by the parties.").

would accept flows from the Service Area. In defining the Service Area, the parties never referenced the MCWDD, or Macomb County for that matter. Rather, they chose to reference a nonexistent exhibit. The recitals do not change these provisions; they merely set the stage for the agreement that is to follow.[26] Nothing in the Macomb Agreement unambiguously defines the Service Area as including the entire MCWDD or the entirety of Macomb County.

Marrocco further contends that the evidence presented by defendants fails to create a genuine issue of material fact regarding the intended meaning of the term Service Area. His argument is flawed in that it begins with the erroneous belief that the Macomb Agreement unambiguously defines the Service Area as including all of Macomb County. This is simply not the case. Setting this aside, Marrocco's arguments speak to whether certain witnesses and documents are credible and the weight to afford this evidence. On a motion brought under MCR 2.116(C)(10), such questions are of no relevance.[27]

In sum, a genuine factual dispute exists regarding the proper interpretation of the Macomb Agreement, and specifically, whether the parties intended for Warren to be part of the Service Area contemplated by the agreement. The question should be put to the fact-finder at trial, not decided on a motion for summary disposition. Accordingly, the trial court should have denied the cross-motions for summary disposition with respect to Count I of the complaint.[28]

After reading the trial court's opinion in this matter, we are left with the impression that the trial court has made credibility determinations and weighed conflicting evidence. One might question whether the judge currently presiding over the matter may set these determinations aside on remand. While we could direct the matter to be assigned to a different judge,[29] we decline to do so at this juncture. Rather, we leave it to the current judge to determine whether it would be appropriate for him to continue to preside over the matter.

## III. WRITS OF SUPERINTENDING CONTROL AND MANDAMUS

Second, we consider whether the trial court erred when it determined that Marrocco was not entitled to a writ of superintending control or a writ of mandamus. In this regard, the trial court did not err.

---

[26] *Acme Cut Stone Co*, 281 Mich at 47.

[27] *Innovative Adult Foster Care, Inc*, 285 Mich App at 480.

[28] Defendants suggest that if the trial court could properly resolve a factual dispute at the summary disposition phase, it should have done so in their favor. It would be equally inappropriate for the trial court to resolve a factual dispute in defendants' favor on a motion decided under MCR 2.116(C)(10).

[29] See *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004) (This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication.").

## A. STANDARD OF REVIEW

A trial court's decision to grant or deny a request for an order of superintending control is reviewed for an abuse of discretion.[30] "A court does not abuse its discretion in refusing to grant a writ of superintending control where the party seeking the writ fails to establish grounds for granting a writ."[31] A trial court's decision to grant or deny a request for a writ of mandamus is also reviewed for an abuse of discretion.[32]

## B. ANALYSIS

Both writs sought by Marrocco may issue only if it is shown that the defendant has failed to perform a clear legal duty.[33] Marrocco cannot show that there is a clear legal duty for the Board to appoint him secretary or manager of the rehabilitation project. At best, by law, the Board is compelled to appoint one of the three members of the Board as secretary.[34] But there is no clear legal duty for the Board to select one particular member over another as secretary or project manager. This is a matter of discretion, and one that is decided by majority vote of the Board.[35] For that reason alone, Marrocco was not entitled to either writ.

Generally, Marrocco claims that the clear legal duty stems from the Board's duty to act in the best interests of the OMIDDD, and his belief that he could complete the rehabilitation project at a lower cost to the OMIDDD and, in particular, to Macomb County. This does not establish a clear legal duty. Cost is but one of many issues that must be considered when deciding such matters. For instance, issues of timeliness and quality are also of relevance. Marrocco also contends that the Board previously resolved to rotate the project manager and secretary positions. This is simply false. The Board resolved to *consider* rotating the position of secretary, but never resolved to actually rotate the position at any point in time. It never even discussed rotating the project manager position.

Additional reasons also preclude the issuance of either writ. "Superintending control is an extraordinary remedy generally limited to determining whether a lower court exceeded its jurisdiction, acted in a manner inconsistent with its jurisdiction, or failed to proceed according to

---

[30] *The Cadle Co v City of Kentwood*, 285 Mich App 240, 246; 776 NW2d 145 (2009).

[31] *Id*.

[32] *Rental Prop Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 518; 866 NW2d 817 (2014).

[33] *Coalition for a Safer Detroit v Detroit City Clerk*, 295 Mich App 362, 366-367; 820 NW2d 208 (2012); *The Cadle Co*, 285 Mich App at 246.

[34] MCL 280.514(2).

[35] See MCL 280.518 (providing that "an action shall not be taken by [the Board] except by a majority vote of its members.").

law."[36] An order of superintending control "enforces the superintending control power of a court over lower courts or tribunals."[37] "Tribunals include administrative agencies acting in a judicial or quasi-judicial capacity."[38] Thus, a circuit court's superintending control power may only be exercised over inferior courts or administrative agencies acting in a judicial or quasi-judicial capacity.[39]

Clearly, the Board is not an inferior court. Our Supreme Court "has employed the term 'quasi-judicial' broadly: 'When the power is conferred by statute upon a commission such as the public utilities, or a board such as the department of labor and industry, to ascertain facts and make orders founded thereon, they are at times referred to as *quasi*-judicial bodies . . . .' "[40] As this Court has explained:

> To determine whether an administrative agency's determination is adjudicatory in nature, courts compare the agency's procedures to court procedures to determine whether they are similar. Quasi-judicial proceedings include procedural characteristics common to courts, such as a right to a hearing, a right to be represented by counsel, the right to submit exhibits, and the authority to subpoena witnesses and require parties to produce documents.[41]

In voting down Marrocco's motions, the Board was not acting in a way that even remotely resembles a judicial proceeding. The Board did not accept a petition or complaint; it was presented with two motions by one of its members. It did not hear evidence or make factual findings; its members discussed the motions and the Board decided whether to approve the motions by majority vote.[42] The trial court correctly concluded it lacked authority to issue a writ of superintending control compelling the Board to act as Marrocco wishes.

---

[36] *In re Credit Acceptance Corp*, 273 Mich App 594, 598; 733 NW2d 65 (2007), aff'd 481 Mich 883 (2008).

[37] *Fort v Detroit*, 146 Mich App 499, 503; 381 NW2d 754 (1985); *Beer v Fraser Civil Serv Comm*, 127 Mich App 239, 243; 338 NW2d 197 (1983).

[38] *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 86; 832 NW2d 288 (2013) (quotation marks, brackets, and citation omitted).

[39] *Id*.

[40] *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 91; 803 NW2d 674 (2011), quoting *People ex rel Clardy v Balch*, 268 Mich 196, 200; 255 NW 762 (1934).

[41] *Natural Resources Defense Council*, 300 Mich App at 86.

[42] Both on appeal and in the trial court, Marrocco has argued that the Board's decision-making process is subject to judicial review under the "substantial evidence" standard, meaning that the Board's decisions will be upheld if there is substantial evidence to support the decision. The "substantial evidence" standard of review applies to factual findings by administrative agencies. See, e.g., *In re Payne*, 444 Mich 679, 688, 692-693; 514 NW2d 121 (1994); *City of Sterling*

-10-

Marrocco cites *Fritz v St Joseph Co Drain Comm*[43] for the premise that superintending control is a proper vehicle for review of a public body's decisions. *Fritz* contains no such holding. As the very first sentence of this Court's opinion in *Fritz* reveals, that case involved a request for a writ of mandamus, not a writ of superintending control.[44] Marrocco also cites a number of cases where appellate courts determined that superintending control was available to compel a drain board to act. In each of these cases, the challenges were to orders made after the board at issue conducted hearings and rendered decisions on contested matters, proceedings that were quasi-judicial in nature.[45] These cases lend no support to Marrocco's position, which involves decisions of an entirely different nature.[46]

"A writ of mandamus is an extraordinary remedy that will only be issued if (1) the party seeking the writ has a clear legal right to the performance of a specific duty sought, (2) the defendant has a clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result."[47] Ministerial acts are those "for which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of judgment or discretion."[48] The selection of a secretary is a

---

*Heights v Chrysler Grp, LLC*, 309 Mich App 676, 681; 873 NW2d 342 (2015). But when the Board considers whether to adopt a proposed resolution, it makes no factual findings. Rather, the Board makes a decision through the votes of its members. The substantial evidence standard is of absolutely no relevance to such a decision-making process.

[43] *Fritz v St Joseph Co Drain Comm*, 255 Mich App 154; 661 NW2d 605 (2003).

[44] *Id*. at 155 ("Plaintiff appeals as of right from the circuit court's order denying his request for injunctive relief *in the form of mandamus*." (Emphasis supplied)). The term "superintending control" does not appear anywhere in *Fritz*.

[45] See *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200; 828 NW2d 459 (2012) (challenge to an order of practicability); *Barak v Drain Comm for Oakland Co*, 246 Mich App 591; 633 NW2d 489 (2001) (challenge to final order of determination and final order of apportionment regarding the establishment of a drain). Marrocco chiefly relies on *Charter Twp of Lansing v Ingham Co Drain Comm*, unpublished opinion per curiam of the Court of Appeals, issued December 2, 2014 (Docket No. 316870. As it is unpublished, this case is of no precedential value. MCR 7.215(C)(1). Regardless, *Charter Twp of Lansing* similarly involves a challenge to a decision, made after conducting a hearing, to the amount a township would be assessed for a drain project.

[46] In his brief on appeal, Marrocco also claims that "the trial court acknowledg[ed] that 'Chapter 21 of the Drain Code authorizes the drainage district to act, generally, in a judicial or quasi-judicial capacity' . . . ." Nothing could be further from the truth. The entire sentence quoted by Marrocco reads, "*Nothing in* Chapter 21 of the Drain Code authorizes the drainage district to act, generally, in a judicial or quasi-judicial capacity." Marrocco's selective and misleading quotation of the trial court's opinion fails to demonstrate any error.

[47] *Coalition for a Safer Detroit*, 295 Mich App at 366-367 (quotation marks and citation omitted).

[48] *Hanlin v Saugatuck Twp*, 299 Mich App 233, 248; 829 NW2d 335 (2013).

discretionary choice, not a ministerial function, and thus, not subject to interference through a writ of mandamus. The same is true of the Board's selection of a representative to serve as manager of the rehabilitation plan. "Mandamus 'will not lie for the purpose of reviewing, revising, or controlling the exercise of discretion reposed in administrative bodies.' "[49]

Marrocco contends that even discretionary acts are subject to mandamus under certain circumstances. And indeed, our Supreme Court has stated that "[m]andamus will not lie in matters involving discretion on the part of a public agency unless its action is so arbitrary and capricious as to evidence a total failure to exercise discretion."[50] The record, however, does not support Marrocco's claim that Gregg and Nash acted arbitrarily. When presented with Marrocco's motions, the Board considered them and discussed concerns. And ultimately, the Board, by a majority vote, declined to approve the motions. Clearly, Marrocco believes the Board should have voted differently. But this does not demonstrate that Gregg and Nash acted arbitrarily or capriciously. Rather, they exercised their discretion. That they disagreed with Marrocco in doing so does not entitle Marrocco to a writ of mandamus.

On appeal, Marrocco also contends that the trial court should have exercised its equitable powers to compel the Board to act as Marrocco wished. We have found no point in the lower court record where Marrocco asked for such relief, and accordingly, this Court need not even consider the question.[51] The argument is also completely devoid of merit. Whether to grant equitable relief is a matter of grace, left to the discretion of the trial court.[52] Equitable relief is appropriate when on the circumstances of the particular case, justice, and good conscience dictate that such relief be afforded.[53] What Marrocco seeks is an order that would overrule majority votes by the Board. We can hardly think of a court order that would be more unconscionable than one allowing the will of a single member of the Board to overcome that of the majority of the Board's members.[54] Moreover, our Legislature has directed that any action of

---

[49] *Citizens for Protection of Marriage v Bd of State Canvassers*, 263 Mich App 487, 493; 688 NW2d 538 (2004), quoting *Teasel v Dep't of Mental Health*, 419 Mich 390, 409-410; 355 NW2d 75 (1984).

[50] *Bischoff v Wayne Co*, 320 Mich 376, 386; 31 NW2d 798 (1948) (quotation omitted). See also *Bannan v City of Saginaw*, 120 Mich App 307, 326; 328 NW2d 35 (1982), aff'd 420 Mich 376 (1984) (same).

[51] See *Hogg v Four Lakes Ass'n, Inc*, 307 Mich App 402, 406; 861 NW2d 341 (2014).

[52] *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

[53] *Id*. at 45-46.

[54] See *Goodfellow v Civil Serv Comm*, 312 Mich 226, 232; 20 NW2d 170 (1945) ("We must not usurp the functions of an administrative body. This the Constitution of the State forbids."). See also 1963 Const, art III, § 2 ("No person exercising powers of one branch [of government] shall exercise powers properly belonging to another branch except as expressly provided in this constitution.").

the Board must be taken by majority vote.[55] Thus, the order sought by Marrocco would not only be unconscionable, but would go against our Legislature's directives. The form of equitable relief sought by Marrocco is entirely inappropriate.

Finally, Marrocco argues that summary disposition was inappropriate because discovery was not complete. He contends that he had requested certain evidence which had not been provided, and had filed a motion to compel discovery of this information before the motions were heard. Marrocco never argued that summary disposition was inappropriate on this basis in the trial court. Quite the contrary, he asserted that summary disposition should be entered in his favor. "A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."[56]

And in any case, the argument is without merit. While granting a motion for summary disposition may be premature if discovery is not complete, it is appropriate "if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's motion."[57] The information sought by Marrocco stood no fair chance of demonstrating that the Board was acting in a judicial or quasi-judicial manner when it rejected his motions, and thus, would not have affected the trial court's decision with regard to his request for a writ of superintending control. Similarly, the evidence has no bearing on whether the Board was clearly bound to approve Marrocco's motions or on the question of whether these decisions were discretionary or ministerial. Accordingly, the trial court did not act prematurely by granting summary disposition in defendants' favor with respect to Count II of the complaint.

## IV. CONCLUSION

In Docket No. 326575, we reverse the trial court's opinion and order to the extent it granted summary disposition in Marrocco's favor with regard to Count I of the complaint and remand for further proceedings consistent with this opinion. In Docket No. 327614, we affirm the trial court's opinion and order to the extent it granted summary disposition in defendants' favor with respect to Count II of Marrocco's complaint. We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Christopher M. Murray

---

[55] MCL 280.518.

[56] *Holmes v Holmes*, 281 Mich App 575, 587-588; 760 NW2d 300 (2008) (quotation marks and citation omitted).

[57] *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006) (quotation omitted).

-13-